## WM. A. KILPATRICK VS. WM. GRAVES et al.

DONATION OF REAL ESTATE FOR CHURCH PURPOSES: *Breach of conditions thereof.*

In 1860, K. conveyed by deed to S. and others, trustees of the M. E. Church South, at Hazelhurst, a lot of ground in said town on which to build a house of worship, for the use of the members of the M. E. Church South, according to the rules of the discipline which may, from time to time, be agreed upon and adopted by the ministers of said church at their general conferences. In 1871, the church authorities sold the lot, tore down the house, and rebuilt it on another lot in the same town. Under the discipline of the M. E. Church South, the trustees of a church, with the consent of the quarterly conference, have the power to sell any church property that has become useless or inconvenient, and to invest the proceeds in other church property. *Held,* that the primary inducement of the donation was a site for the Methodist Church in Hazelhurst, the gift subject to be dealt with according to the rules and regulations of that church, and that the grantor adopted the discipline of the church as affording the rules and regulations for the use of the grant as fully as if he had embodied them in his deed of conveyance; that the changing of the site for a building to a more eligible place for a house of worship is not a breach of the conditions of the trust, but rather rendering it more useful for the purposes intended. PEYTON, C. J., dissenting.

APPEAL from the Chancery Court of *Copiah* County.

Hon. E. G. PEYTON Jr., Chancellor.

Complainant filed his bill in the chancery court of Copiah county, in which he alleged that in 1860, one William A. Kilpatrick conveyed to Thomas Stuart and others, trustees of the Methodist Episcopal Church South, in the town of Hazelhurst, a certain lot of land, in said conveyance mentioned, to be held in trust for the benefit of the said church; that a house of worship

was erected on said lot in accordance with the terms of said grant, and so used until some time in 1871, when the church authorities abandoned said house and lot, tore down the house and removed it to another lot, and sold the lot conveyed by complainant to a person who constructed a blacksmith shop thereon; that the conditions of the grant were that the lot was to be used for church purposes, and that the stipulations of the deed had not been complied with. The bill prayed for a reconveyance. The court decreed a reconveyance of the property to complainant, and from this decree the case comes into this court by appeal.

The following is assigned for error, to wit:

1. The court erred in overruling the demurrer filed to the bill. It should have been sustained and the bill dismissed.

2. The court erred in rendering the final decree for the appellee.

3. The court erred in overruling the objections taken to the depositions introduced to explain and vary the terms of the deed from Kilpatrick to the trustees of the church.

*W. L. Nugent*, for appellants:

1. The gravamen of the bill is this, that inasmuch as the trustees, to whom the legal title to the lot was conveyed, have exchanged that lot for another, held to the same uses as the first, the grantor, Kilpatrick, may reclaim the property, and that upon the assumption that the lot was conveyed for "the purpose of erecting and continuing thereon a house of worship, for the use and benefit of the members of the Methodist Episcopal Church South." This stipulation does not appear in the deed at all. The trusts set forth in the deed have not failed, and the *cestui que trusts* do not complain of the sale. On the contrary, they were privy to the sale, which was made by the proper authorities of the church. And, besides, the lot has passed to a *bona fide* purchaser for value, and without any notice of the pretended equity relied upon by the appellee, so that there could be no resulting trust. Gibson *v.* Armstrong, 7 B. Mon., 481; Kerlin *v.* Campbell, 15 Penn. St., 500. The case presented by the bill rests upon a parol declaration of trust, which is in contravention of our statute. It is not

alleged that the trust recited in the deed has failed; it was, in fact, preserved by the very sale of the lot of which the appellee complains. There was no provision in the deed looking to a reclamation of the land in any event. 2 Story's Eq. Jur., §§ 1171, 1181. But even if there had been a breach of the trust, or a failure, the appellee has lost all right to complain by acquiescence. Sheeman v. Wilson, L. R., 13, Eq., 36; Taylor v. Cartwright, L. R., 14, Eq., 167. If the deed rested upon a condition subsequent, the bill is fatally defective. The remedy at law by entry for condition broken was "full, adequate and complete," and, besides, a court of chancery never lends its aid to enforce a forfeiture. 4 Kent's Com., 126, 127, 130; 2 Story's Eq. Jur., 1319; Livingston v. Thompkins, 4 Johns. Ch., 415; Warner v. Bennett, 31 Conn., 478; Crane v. Dwyer, 9 Mich., 350. The allegation of an abandonment is far fetched. The doctrine does not apply to anything but easements, incorporeal rights annexed to land, and incipient titles. Legal rights once vested must be directed according to law. 3 Kent's Com., 448; 2 Hill on Real Prop., §§ 3, 12, 13, 78, 79. And, besides, the bill shows a sale or exchange of the lot, which is inconsistent with the idea of an abandonment. The demurrer ought, therefore, to have been sustained.

2. The lot was conveyed in trust "for the use of the members of the Methodist Episcopal Church South, according to the rules of the discipline * * * adopted by the general conference," etc. The lot given by Cook in exchange for the Kilpatrick lot is held upon the same trusts. The members of the entire church South, were the beneficiaries of Kilpatrick's bounty. Smith v. Swormstedt, 16 How., 288; Den v. Bolton, 7 Hals. (N. J.), 206. The use of the property was controlled and only limited by the rules of the discipline; the disposition of the property was to be regulated by that discipline. It was so disposed of and the purposes of the trust subserved. If the grantor had not expressly directed the mode in which the property could be disposed of, there can be no doubt that, in this case, a court of chancery had

the power to require the very exchange here complained of, for the simple reason that the purposes of the trust were thereby more effectually accomplished.    Alemany *v.* Wensinger, 40 Cal., 288 ; And there is no reason why the trustees could not do the same thing when the facts necessitated it, without waiting for the decree of the court.    The effect would have been to reëstablish the trust.    In re Parke's Charity, 35 Eng. Ch. 330 ; Attorney General *v.* Kerr, 17 id., 2 Beav., 428 ; 43 id., 3 Beav., 95.    The alienation was not improvident, but beneficial to the charity and conformable to the rule which ought to guide the trustees.    Attorney General *v.* Warren, 2 Swans., 303.    The sale to Cook was in exact accordance with the ecclesiastical law embodied in the discipline, the very authority prescribed by the grantor, and this ought to end the controvery.    Discipline M. E. C. S., 180, ch. 11, § 4, par. 2.

*C. E. Hooker*, for appellee :

Had the church authorities and the grantees of Kilpatrick the right to abandon the lot for church purposes, and sell and use the same for other purposes?

We submit that it cannot be justified on the ground that the discipline of the Methodist Episcopal Church contains stipulations giving power to sell and dispose of property.    This cannot defeat the grant.    Hayden *v.* Inh. of Stoughton, 5 Pick., 528 ;  Pickle *v.* McKissick, 21 Penn. St., 232.    It is conceded by the answer that the property has been abandoned and sold, and that their vendee is using it for a different purpose.

SIMRALL, J., delivered the opinion of the court.

The complainant's equity as claimed by him rests upon the predicate that the lot of ground in dispute was, conveyed to certain trustees, to be used as the site of a Methodist church or house of worship; but that since the grant, the house has been torn down and removed to another lot in the town of Hazelhurst, and that the trustees, or their successors, have sold the premises, so that the charity has entirely failed.

It becomes very important in order to determine that question, to ascertain precisely the nature and character of the trust declared. That involves a construction of the grant.

The conveyance is (to the persons named), "and their successors in trust for the uses and purposes hereinafter mentioned and declared." The *habendum* clauses are in substance, to have and hold the premises, etc., to the trustees (naming them), and their successors in office, forever, in trust (and upon which there is now being erected a house), for the use of the members of the Methodist Episcopal Church South, according to the rules of the discipline which may from time to time be agreed upon and adopted by the members and preachers of said church at their general conference.

And upon the further trust that duly authorized ministers and preachers, according to the constitution and rules of that church, may expound God's holy word therein.

The trusts are for the use of the members of the Methodist Episcopal Church South, according to the rules of the discipline. And that God's holy word may at all times be expounded therein by duly appointed preachers and ministers. In the first declaration of trust, the sentence is interjected that a "house" (that is, a meeting house, a house for worship) "is now being erected." The testimony is that the house was being built, or had just been completed when the conveyance by Kilpatrick was made. The complainant insists that his grant was upon the condition that the premises should be perpetually used as a place of worship; and since the trustees have removed the "house" and sold the property, the condition has been broken, and he should resume the grant. Is that a proper interpretation of his deed? Plainly the gift was intended for the site of a church edifice. But it was for the use of the members of the Methodist Episcopal Church South, according to such rules as the ecclesiastical authorities of that church have, or may establish on the subject of church edifices, and the sites upon which they are built.

The primary inducement and motive is the donation of a site

for the Methodist church in Hazelhurst; but the gift subject to be dealt with according to the rules and regulations of that church.

The grantor manifests a knowledge of the policy of the Methodist church, of its laws in reference to church property, and a confidence in the wisdom of its judicatures, by recognizing that a future change in these regulations shall apply to his grant. This refers to the discipline as affording the rules and regulations according to which the property may be used by the beneficiaries, and adopts them as fully as though he had quoted them in his deed and made them part of it. The regulations of the discipline are to be found in §§ 3 and 4, pp. 176 to 180 inclusive. Among them are these: " Annual conferences shall make such modifications in the deeds as the usages and laws in the different states require, so as to secure the property firmly by deed, and permanently in fee simple in the  *  *  *  church. And in all conveyances of ground upon which houses of worship have or may be built, this clause should be inserted, that the ministers and preachers shall be permitted to expound God's holy word therein (p. 180). The trustees, with the consent of the preacher in charge, and the quarterly conference, shall have power to sell any church *  * property which has gone out of use, or should be removed to another place, the proceeds of which shall be invested in other church property, under direction of the quarterly conference."

The complainant, by his grant, expressly consented that his gift might be used by the church, as in the section of the discipline just quoted, that is to say, if it became expedient in the estimation of the official authorities, according to the organization of the church, that the house of worship should be removed to some other place, then the trustees might sell and make a like investment of the proceeds in some other more convenient locality. This regulation of the Methodist denomination is marked with that practical good sense and wisdom which so eminently distinguish its working instrumentalities and polity. It mounts its ministers upon horseback and sends them along with the advancing tide of population to plant the church in the new settle-

ments.  It does not wait until the towns and the rural districts fill up with population, to determine the most eligible site for its church edifices; but it builds its houses according to present exigencies, and if by the shifting of population in towns and cities, or the change of roads and settlements in rural districts, it is shown that a change of location would be more convenient to the people, it can sell the old site and invest the proceeds in the new.  Every grantor of ground for a church edifice, who consents in his deed that the property may be used according to the regulations of the discipline, agrees, when the necessity arises for the removal, that there may be a sale of the land which he grants, and another investment in a more convenient place; and of this necessity, the church judicatories are the sole judges.  Nor is there injustice or wrong in this; it rather fosters and promotes the charity.  The primary motive with Kilpatrick was to provide a place in Hazelhurst where the gospel could be preached according to the plan and doctrine of the Methodist Episcopal Church South. If the lot which he donated several years ago has, by the location of streets and improvements in other parts of the town, become less accessible to the congregation (as has been abundantly shown by the testimony), he ought to rejoice that the charity which he aided has, by a change of location, dispensed a larger benefit to the people.

There has not been a failure of the trust, or a diversion of his trust to other and secular purposes.  What the complainant contributed has in effect been transferred to a more eligible place, where his bounty would contribute to a larger good.  He gave a site to the house of worship.  In the course of time, it has turned out that it was inconvenient; that site has been the means of procuring a better place, where the congregation has grown to twice its former size, and where the word of God is expounded to the people of Hazelhurst according to the doctrines and methods of the Methodist Episcopal Church.  By the terms of his grant, he consented that such change should be made, and that his donation should be sold and invested in the new site and edifice.

Such a change cannot be said to have displaced the original trust; the premises had from circumstances become unsuitable for a place of worship; the removal reëstablished the trust and charity, and enlarged and enhanced its utility.

In Alemany v. Wensinger, 40 Cal., 289, a court of chancery ordered the sale of church property held in trust by the Roman Catholic bishop of San Francisco, "for the use of the Roman Catholic German Congregation of the city," and the investment of the proceeds in other property in a part of the city better suited to the trust, and to be held on the same terms. The report of the case shows that the archbishop held the property in the trust named ; it was held to be no displacement or interference with the trust, but rather a fuller and more beneficial development of it, to sell the premises which had become surrounded by business houses, hotels, etc., and invest the proceeds in other property convenient to the congregation and free from such surroundings. Plainly, a court of equity would not defeat a charity, whilst it would, from the change of circumstances not foreseen at the time it was founded, give its sanction to such administration of it as would more completely give it effect.

A court of chancery may, in a proper case, order the sale of property held for charitable uses. Hill on Trust., side p. 463. And that in some instances, where clearly beneficial, the trustees may sell without the intervention of the court, but in neither case, so as to divest the fund and defeat the purpose.

The trust ought to be carried out on the terms prescribed by the founder. If the particular purpose is clearly defined, that must be pursued by the trustee. Several illustrations are collected by Hill on Trust., top p. 725. As where the estate is given for the repair of a chapel, it would be a diversion to use any of the funds for general parish purposes. If it be to establish an hospital, it would be improper to apply it to paving a street of the town. If donated for the benefit of the inhabitants of one town or parish, it could not be used for those of another town or parish.

Donations to trustees, to support the form and worship of a particular church, cannot, at the instance of the majority of the members, be directed to maintain a different form of worship and doctrine from that indicated by the founder. Such is the doctrine of many if not the weight of the cases. 11 Paige, 647; 6 Barring, 201; 14 B. Monr., 48.

In the case at bar, the donor donated his gift to the members of the Methodist Episcopal Church South, to be used in accordance with their discipline. The acts of which he complains are not a diversion of the estate to some other denomination of Christians, nor to a Methodist church in some other town, or for the benefit of some other congregation; nor that it has not been used in aid of a house of worship for the same people in the pale of the same church organization. The acts done have been in furtherance of the charity. It has provided for the same people in the same town a better house of worship. It has attracted larger congregations to hear the word of God expounded according to the Methodist doctrines. This wise administration of the trust has been in accordance with the donor's license and consent, in declaring that the property should be for the use of the members of the Methodist Episcopal Church according to their discipline. The donation was for a house of worship — a place where the gospel should be expounded forever by Methodist preachers and ministers, subject to the condition, however, in the discipline, that if necessary, the place might be changed and the property sold to aid in getting the new place of worship. So long, therefore, as his gift is devoted to that specific object, whether at the original or new site, the trust is being executed.

There has been no breach of trust or condition, and the title to the lot has not revested in the complainant.

This case is distinguishable from, and stands upon different grounds from those of Daniel v. Jacoway, Freem. Ch. (Miss.), 63, 64; Police Jury v. Reeves, 6 Mart. (La.), 221, and cases cited in brief of counsel for appellees.

The proof is clear and abundant, that the ecclesiastical author-

ities in making the sale and removal of the house, acted in accordance with the rules laid down in the discipline. The depositions of the very intelligent presiding elder and other officials of the church go to the point, that they acted in the premises as the church authorities construe the power conferred by this and similar deeds. To this, however, I attach no importance as influencing my judgment.

I am of opinion, therefore, that there is error in the decree.

It is reversed, and judgment in this court dismissing the bill.

PEYTON, C. J., dissenting.

The material facts of this case are these: In the year 1860, William A. Kilpatrick conveyed to Thomas Stewart, Hugh Dunning, George W. Killcrease, James Crawford, Cornelius Trawick, William Graves, and John C. Nixon, trustees of the Methodist Episcopal Church South, at Hazelhurst, a certain lot or parcel of land situate in said town of Hazelhurst, and particularly described in the deed of conveyance, for the location of a church thereon, for the use of the members of said church, according to the rules of the discipline which may from time to time be agreed upon and adopted by the ministers and preachers of the said church at their general conferences, and in further trust and confidence that they shall at all times forever thereafter permit such ministers and preachers as shall be authorized by the general conference to preach and expound from time to time God's holy word therein.

A church was erected on said lot, and was used as a house of worship by the members of said church, from the time of its erection until some time in the year of 1871, when the trustees and officers of said church removed said church building off said lot to another lot 800 yards west of it in said town of Hazelhurst, where it is now used as a house of worship and for the performance of religious services by the members of said church.

In said year of 1871, the trustees of said church conveyed the lot of land in controversy to E. G. Cook, who conveyed the same to one Thomas E. Stanley, who erected thereon a blacksmith's

shop, and has ever since used the same as a work and black-smith's shop.

Upon a bill filed by said William A. Kilpatrick in the chan-cery court of Copiah county, against the trustees of said church, E. G. Cook and Thomas E. Stanley, for a reconveyance of said lot, setting forth these facts, that court on a final hearing of the cause, decreed a reconveyance of said property to the complain-ant, and from this decree the case comes into this court by appeal.

It is here contended by the counsel for the appellants that the appellee's deed of conveyance was founded on a valuable con-sideration, and that the trustees of the church thereby acquired an absolute estate in fee simple in the property, and that Cook and Stanley as *bona fide* purchasers from them for valuable con-sideration, without notice of any contingent right of the appel-lee, acquired an indefeasible estate in fee simple to said lot of ground.

On the part of the appellee, it is insisted that no money or other valuable consideration was ever paid to him for said lot of land, that the consideration mentioned in his deed of conveyance was merely nominal, and that said conveyance was a pure and simple donation of the lot for the specific object and purpose of being a location and site for a church for divine service, according to the rules and discipline of the Methodist Episcopal Church South.

The rules which prevent the introduction of parol evidence to contradict or vary a writing have no application where it is offered to show a want or failure of consideration. Buckels *v.* Cunning-ham, 6 S. & M., 358, and Matlock *v.* Livingston, 9 S. & M., 489.

The recital in the deed, acknowledging the receipt of $100, is *prima facie* evidence of the fact, but does not prevent the intro-duction of other proof showing that nothing was paid. White *v.* Miller, 22 Vt., 380; Glenn *v.* Grover, 3 Md., 212; Spalding *v.* Brent, 3 Md. Chan. Dec., 411; Wooden *v.* Shotwell, 3 Zabr., 465, and Ayres *v.* McConnel, 15 Ill., 230. It is admissible to prove the true consideration, though a different consideration be

expressed in the written instrument.    Marsh *v.* Lisle, 5 George, 173.

Hugh Dunning, who was one of the trustees of the church, and who wrote and took the deed to the lot, as a witness on the behalf of the appellants, in his answer to the third cross-interrogatory, whether or not the complainant ever received the $100 mentioned in the deed, testified that he never did receive the $100 or any part of it, and that the conveyance was a donation of the land to the church.

William A. Kilpatrick testified that no consideration was ever paid him for said property, and that his conveyance thereof to the trustees was a voluntary donation for the express purpose of establishing and maintaining a Methodist church on that ground.

The evidence clearly establishes the fact that the conveyance made by the appellee to the trustees of the Methodist Episcopal Church South, at Hazelhurst, of the lot of land in controversy, was a donation for the specific purpose of making it the site of a Methodist Church, to be thereon erected and maintained.

The question presented by the record for the decision of this court is, Did the said lot revert to the grantor upon the removal of said church off the ground, donated to another and different lot of ground some 800 yards distant from it, with the avowed intention to abandon it as the site of a Methodist Church?

The estate created by the conveyance in this case is not properly an estate on condition, either precedent or subsequent.    It is not an estate on a condition precedent, upon the performance of which the estate would become absolute and indefeasible.    Nor is it an estate on condition subsequent, by the nonperformance of which the estate already vested may be defeated.    But it is a base or qualified fee.    This estate is a fee, because by possibility it may endure forever; yet as that duration depends upon the concurrence of collateral circumstances, which qualify and debase the purity of the donation, it is therefore a qualified or base fee. 2 Black. Com., 109.    The idea of this estate is illustrated in that class of conveyances which limit the estate conveyed to some

particular use or purpose. For example, when lands are conveyed to a railroad company, so long as used for the purpose of the railroad, it constitutes a base or qualified fee, because the estate ceases whenever the company ceases to use the land for the purpose named. The same is true of conveyances limited to an occupation for specified purposes of any other character. Bingham on Real Estate, 22. So a grant to a canal company, "as long as used for a canal," has been held a qualified fee. State v. Brown, 3 Dutch., 20. This estate is liable to be defeated, as before stated, by something collateral to it which may never happen, and this defeasible character of the estate distinguishes it from a technical fee simple. 1 Washb. on Real Estate, 67.

The contingency, which, when it happens, will determine the estate, cannot properly be called a condition, but a limitation. Walsingham's Case, Plowd., 557, and 1 Washb. on Real Estate, 77.

If this is a qualified fee, as I think I have shown it to be, the doctrine of a *bona fide* purchase for valuable consideration without notice cannot affect the right of the grantor to the reversion upon the determination of this estate. For when the owner of a determinable fee conveys in fee, the determinable quality of the estate follows the transfer; and this is founded upon the maxim of the common law, that *nemo potest plus juris transferre in alium quam ipse habet.* Within that rule the proprietor of the qualified fee has the same rights and privileges over the estate as if he was a tenant in fee simple; all the estate is in the grantee, notwithstanding the qualification, and no remainder can be limited over, nor any reversion expectant thereon, other than the possibility of a reverter when the estate determines or the qualification ceases. 4 Kent, 9.

It is a well known rule, imported into our own from the civil law, that no man can transfer a greater right or interest than he himself possesses. The owner, for example, of a base or determinable fee, can do no more than transfer to another his own estate, or some interest of inferior degree created out of it. Of this rule a familiar instance is noted by Pothier, who observes that where prescription has begun to run against a creditor, it will continue to

do so as against his heirs, executors or assignees, for the latter succeed only to the rights of their principal, and cannot stand in a better position than he did himself.

The general rule of law is undoubted, that no one can transfer a better title than he himself has. *Nemo dat quod non habet.* To this rule, however, there are some exceptions, one of which arises out of the rule of the law-merchant as to negotiable instruments. Another arises by a sale in market overt where such exists, and a third exception to the rule occurs in connection with the important subject of stoppage *in transitu.* Broom's Legal Maxims, 350, top page.

Cook, in his answer to the bill of complaint, does not set up the defense that he was a purchaser for valuable consideration without notice of the contingent right of Kilpatrick to the reversion of the property. Nor can Stanley, who suffered a decree *pro confesso* to be taken against him, make this defense in this court. But even had Cook and Stanley interposed this defense in the court below, it could not have availed them, for the reason that they respectively took the estate upon the exchange of the one and the purchase of the other, with the defeasible quality attached to it, and could acquire no larger estate or better title than the trustees had when the exchange of lots was made between them and Cook. 1 Washb. on Real Estate, 79 ; 1 Preston on Estates, 440 ; and Lead. Cas. 606.

When a tract of land was granted to the board of county police, for the use and benefit of the county of Neshoba, for a county site for a court house, and the board of police entered upon the land, built a court house, laid off town lots and sold them, but subsequently removed the county site and court house from said tract of land to another tract, some three or four miles distant, it was held that the land reverted to the grantor. Daniel *v.* Jacoway et al., Freeman's Ch., 59. The same doctrine was maintained in the case of the Police Jury *v.* Reeves, 6 Martin (N. S.), 221.

The law seems to be well settled that where estate is held sub-

ject to be defeated by the happening of a contingency, the estate will pass to an alienee subject to the occurrence of the contingency, and will be determined by the happening of the contingency. So that neither Cook nor Stanley took a larger estate in, or better title to, the property in dispute than the trustees received by the conveyance to them for the benefit of the church.

Upon the whole, I can perceive no error in the action of the court below, and therefore think the decree of said court ought to be affirmed.

There was a petition filed for a reärgument in this case, which was refused; upon which

TARBELL, J., delivered the opinion of the court.

The reasons advanced in support of the petition for reärgument have been examined and considered. The deed contains no express stipulation for reversion of title in any event, and it was signed without being read by the grantor. If he intended any reversion for any cause, this was certainly a great oversight and want of prudence. Reversion of title in such cases is easily secured by a single paragraph in the conveyance.

The clauses of the grant relied upon by counsel as showing the intention of the grantor to convey upon conditions, the nonobservance of which should result in a reversion of title, have been reconsidered without any change of opinion. These clauses, as construed by a majority of 'the court, indicate no such intention nor conditions as are contended fór. It is suggested in the present argument that the conveyance was for the use and benefit of the local church, and not for the body of the M. E. Church. On the contrary, the deed, by its terms, is to the church at large, to be used according to the rules of its discipline.

The deed is in fee to the trustees and their successors forever. The clause and only clause of the conveyance, which can be claimed as indicating the terms insisted upon by complainant, is this: That the trustees "shall at all times, forever hereafter, per-

mit such ministers and preachers belonging to the said church as shall, from time to time, be duly authorized    *    *    to preach and expound God's holy word therein."

The reasonable and consistent reason of this clause is in the fact, 1, that it is transferred from the discipline of the church to the deed ; and, 2, that it was manifestly intended to prevent the exclusion from its pulpit of duly accredited preachers in good standing, and consequently of good character and repute, through the schisms and divisions which have fallen upon the church of late years.

Manifestly, this clause has no reference to title, and was not intended, on the face of the deed, to affix any limitation or condition thereto.   But the deed was not read by the grantor before signing, and he, therefore, did not know its contents.   It was dictated and drawn by the trustees.   A case of fraud is neither pretended, charged or made out.   Instead, the case rests and is based upon the construction of the terms of the grant.   Upon this theory, a majority of the court adhere to the judgment heretofore pronounced, and refuse a reärgument.