Fair *v.* First Methodist Episcopal Church.

ROBERT FAIR and "THE TRUSTEES OF THE BLOOMINGDALE METHODIST EPISCOPAL CHURCH"

*v.*

THE FIRST METHODIST EPISCOPAL CHURCH OF BLOOMINGDALE, DAVID R. SLOAN et al.

[Decided January 12th, 1899. Filed June 10th, 1899.]

A deed of property in trust for the benefit of members of a certain church according to the rules and discipline which from time to time may be adopted by the general conference, and to permit duly-appointed preachers to preach in the church to be erected thereon, authorizes a majority of the church members, acting in accordance with the discipline of the church, to sell the property and devote the proceeds towards building a larger church on a different site.

On order to show cause why an injunction should not issue. Heard on bill, affidavits and exhibits on the part of the complainants, and affidavit on the part of the defendants.

*Mr. George Biller*, for the complainants.

*Mr. Ralph W. Shaw*, for the defendants.

PITNEY, V. C.

The contest in this case is over the title in equity to a small church and parsonage situate in the village of Bloomingdale, in the county of Passaic, and the present question is whether the complainants, or either of them, have shown such a *prima facie* equitable title as to induce the court to stay until final hearing an action of ejectment commenced by the defendant corporation.

The complainant Fair is in possession by virtue of a conveyance from certain individuals naming themselves as trustees of a then unincorporated association known as the "Trustees of the Bloomingdale Methodist Episcopal Church," which association was, after the conveyance, duly incorporated and assumed the

name of the "Trustees of the Bloomingdale Methodist Episcopal Church," and is one of the complainants, and they assert that one or the other of them holds the equitable title. Fair is in possession by the consent of the other complainant, and holds as its representative if not as its grantee. The individual defendants and the First Methodist Episcopal Church of Bloomingdale claim that the latter holds both the legal and equitable title, and the last-named corporation has brought an action of ejectment against Fair to recover possession.

As soon as that action was commenced the complainant Fair presented his bill, with affidavits and exhibits, to a vice-chancellor, and obtained an order to show cause why an injunction should not issue, with *interim* restraint, which still continues. On the return day of that order it appeared that the bill was framed mainly with the view of procuring the legal title, and that the authority from the church dignitaries for the conveyance of the equitable title from the "Trustees of the Bloomingdale Methodist Episcopal Church" to Fair was not sufficiently set forth, whereupon the hearing of the order was postponed and liberty given to the complainant to amend in that respect. Upon the adjourn day an amended bill was presented, in which the "Trustees of the Bloomingdale Methodist Episcopal Church" was joined as a complainant and the mode of making title from it to Fair was set forth. It may be inferred that the object of joining it was that in case it should appear that, by reason of any defect in the conveyance from it to Fair, even the equitable title failed to pass, the principal object of the bill might be attained.

All parties claim under a deed of conveyance from Martin John Ryerson, made in 1843, to certain individuals as trustees, on certain conditions and trusts, which may be abbreviated to be in trust, first, for the benefit of the members of the Methodist Episcopal Church in the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of said church at their general conference in the United States; and second, to permit such ministers and preachers as might be for that purpose

32

appointed by the annual conferences of that church to preach in
the church to be erected thereon ; and third, a condition provid-
ing for a perpetuation of the legal title in the trustees and their
successors by the selection of new trustees in a particular manner
—all in accordance with the discipline of the church at the date
of the deed.

The allegations of the bill and admitted facts are that an or-
·dinary unincorporated religious society, conducted according to
the discipline of the Methodist Episcopal Church, was organized
at or about the date of the conveyance, and by voluntary con-
tributions raised the money and built the church and parsonage
upon the premises, and continued to occupy and use them for
church purposes down to the year 1897.

No legal incorporation of the trustees was had.   It does not
appear that there was any election of new trustees in the place
of those named as grantees in the deed in the precise manner
therein provided for, and all of the old trustees are dead.

The word "heirs" was not used in the deed, so that the
trustees took an estate for life in the legal title and the fee stood
in the heirs of Martin John Ryerson, who had died in the mean-
time.    And if the case rested there, one question would be
whether or not those heirs could be compelled to convey, as in
*Methodist Episcopal Church* v. *Town, 2 Dick. Ch. Rep. 400.*
But that question does not arise, because the heirs of Ryerson
have recently conveyed to the defendant the First Methodist
Episcopal Church of Bloomingdale.   And it seems to me that
the mode of transmitting the legal title from one set of trustees
to their successors prescribed in the Ryerson deed is impracti-
cable under our legal system.  So that the fact that the case does
not show any election of successive trustees in accordance with
the scheme laid down in the deed, does not affect the merits of
the present controversy.

Some time after the 16th of November, 1897—the precise
date is not given—certain persons, being members of the congre-
gation worshiping at the church in question, attempted to in-
corporate themselves under the Religious Corporation act, taking
the title of the "Trustees of the First Methodist Episcopal

Church of Bloomingdale." Whether that incorporation was regular or not does not appear. It is, however, made a defendant as such.

Subsequently, in the month of April, 1898, the complainant corporation was duly organized by certificate duly recorded, a copy of which is annexed to the bill. By its certificate it states that the congregation of the Bloomingdale Methodist Episcopal Church met at their tabernacle at Butler, which is their usual place of meeting for public worship, and elected trustees and incorporated themselves according to the act of the legislature.

One question, and probably the principal question in the cause, is whether or not the complainant corporation or the defendant corporation is the true representative and trustee of the unincorporated association, which for over fifty years used and occupied the church property in question, or, rather, whether the religious association which originated and supports the complainant corporation is the true continuation and successor of the association which used and occupied the premises for so many years.

Other facts disclosed by the pleading and affidavits are as follows : Bloomingdale is a small village in Passaic county, on the banks of the Pequannock river, a narrow stream. Immediately across the river, in Morris county, is the village of Butler, which has recently grown up as a manufacturing town until it has become more populous than Bloomingdale. But for the circumstance that the river is the boundary between two counties, the two villages would be known as one town. They are practically one. With the growth of population a large majority of the attendants upon the Bloomingdale church came from Butler and there resided. The church grew to such a size in numbers that the church edifice in Bloomingdale became too small, and the lot is too small for a larger one. Mr. Butler, one of the proprietors of the town of that name, made a present to the Bloomingdale congregation of a large and valuable site for a church and parsonage in Butler. Whereupon the congregation met, and, by a large majority, decided to move to Butler, and to accept the gift of Mr. Butler and to build there ; and they did build a parsonage and chapel, and used the latter for worship.

They retained the possession and use of the old church at Bloomingdale, and finally resolved to sell it. They took proceedings for that purpose under the act of March 28th, 1895. *P. L. of 1895 p. 707.* They also applied to what is called the "quarterly conference" for leave to sell, and obtained its permission. This was necessary under the discipline of the church, which also requires the consent of the presiding elder. The bill and affidavits do not show distinctly that consent by the presiding elder was given. It was stated by counsel that that officer is a necessary member of the quarterly conference, and that his consent was actually given. The proceedings show that the quarterly conference authorized the church to convey, and that at a meeting of the congregation a very large majority were in favor of selling and conveying, and that they did agree to sell and convey, and caused a deed to be executed by the trustees to Mr. Fair before either of the attempted incorporations.

The minority were dissatisfied with this action of the majority in selling out the church property at Bloomingdale and moving over to Butler, and one of their members applied to this court for an injunction to restrain the sale, but the application was met, as I am informed, by an expression of opinion against the complainant, and the proceeding was abandoned.

The minority thereupon attempted to incorporate themselves under the name of the First Methodist Episcopal Church of Bloomingdale, and procured from the heirs of Ryerson conveyances of the Bloomingdale church lot, without consideration, to the First Methodist Episcopal Church of Bloomingdale, its successors and assigns, in which it is declared that

"it is the intention of the party of the first part to convey and confirm to the party of the second part all the right, title and interest in and to the premises which have or may accrue to the party of the first part by reason of any errors or defects contained in the deed from their ancestor, but only for the uses and purposes as are in the said deed mentioned and set forth."

The object of these deeds was undoubtedly to make up for the lack of the word "heirs" in the original deed. So that if the complainants, or either of them, ever had an equity against the

heirs of Ryerson to be invested with the legal title, that equity still exists as against the defendant the First Methodist Episcopal Church of Bloomingdale, which paid no consideration to the Ryerson heirs for the deed of confirmation.

This deed of confirmation puts at rest any question whether the trusts declared in the original Ryerson deed were so declared for the benefit of Ryerson or the benefit of the church association, and eliminates one of the questions discussed in *Holmes* v. *Church, 41 Atl. Rep. 102,* and *Mills* v. *Davison, 9 Dick. Ch. Rep. 659.*

I am satisfied that the trusts were declared entirely for the benefit of the church association, and their effect is simply to prevent the appropriation of the property conveyed to any purposes other than those specified in the deed.   The trusts were strictly in accordance with the discipline of the church at that time, and it follows that the legal title, wherever it was held, was so held for the benefit of the unincorporated association known as the Bloomingdale Methodist Episcopal Church, and that that association, by and with the consent of the proper church authorities, and acting always in strict accordance with the discipline of the church, was empowered to make a conveyance of the church property.   For it must be borne in mind that the corporation proper, in the case of organizations of Presbyterians and Methodists at least, consists entirely of the duly-elected trustees, and does not include the congregation.   *Everett* v. *Church, 8 Dick. Ch. Rep. 500; Holmes* v. *Church, 41 Atl. Rep. 102.*   The legal corporation holds the legal title to the church property in trust for the congregation, and subject to its disposition, so far as the congregation acts in accordance with the church discipline.

To make the conveyance here attempted, under the circumstances stated, was, in my judgment, no breach of the trust declared in the Ryerson deed.   The discipline of the church for the time being forms a part of the declaration of trust, and that discipline now provides for the abandonment of church property by sale thereof.   Of course the church authorities are presumed to see to it that the proceeds of the sale are properly applied to

church purposes, and hence not diverted from the purposes to : which the property was originally devoted. Here it is to be presumed that the proceeds of the sale will, under the direction of the quarterly conference, be applied in such a manner as it shall see fit, probably and naturally to the building of a new church edifice at Butler.

Whether the attempted conveyance was efficient, or not to pass · the equitable title, is a question entirely between the two complainants herein.

The majority of the church members, as I have said, had a right to sell that property and to move the congregation across the creek to the adjoining town of Butler, providing they had the sanction and approval of the church authorities. Such action did not amount to a secession by the majority, accompanied by rejection of the authority of the church dignitaries, and an attempt to divert the property from the purposes to which it was originally devoted, which, as in *Knights of Pythias* v. *Germania Lodge, 11 Dick. Ch. Rep. 63,* and *Schubert Lodge* v. *Schubert Verein, 11 Dick. Ch. Rep. 78,* would forfeit the right of the majority to govern and work an abandonment of the church organization by the majority to the minority, nor did it give rise to any right upon the part of the minority to appeal to the courts against the action of the majority on the ground of a breach of trust. See *Hendrickson* v. *Decow, Sax. 577 ; Altmann* v. *Benz, 12 C. E. Gr. 331.* And, in my opinion, it was incompetent for the minority, by going through the form of incorporating themselves—whether such action was efficient for that purpose or not—and obtaining the title to the premises, to thwart the will of the majority in that respect. If the deeds of the Ryerson heirs passed the legal title to the defendant corporation, it is still held by it for the benefit and subject to the control of the congregation. And I will add that the bill and affidavits indicate, to say the least, that the majority party in this unfortunate controversy has been recognized by the quarterly conference as the true and real association entitled to control the property in question, and, if this be so, I am unable to see how the defendants can succeed in retaining the property.

The bill does not state distinctly why the corporation complainant was added to the amended bill. A reason quite sufficient, independent of the one first suggested, is disclosed by the affidavit presented on the part of the defendants, which shows that Fair holds the warranty deed of the individual trustees of the unincorporated association, and that he has given back a mortgage for a part of the consideration, which is presumably still held by the other complainant. It thus appears that it is distinctly interested in maintaining Fair's title.

Upon the whole case it seems to me that the injunction should be held and the possession of Fair maintained until the final hearing.