## TAYLOR ET AL. *v.* CAMPBELL ET AL., TRUSTEES.

[No. 7,688.   Filed May 28, 1912.]

1. APPEAL.—*Objections to Introduction of Evidence.*—Only such reasons as are assigned in the trial court as objections to the introduction of evidence will be considered on appeal.  p. 519.

2. TRIAL.—*Objection to Evidence.—Sufficiency.*—An objection to the admission of evidence must be specific and state the grounds of objection.  p. 520.

3. APPEAL.—*Review.—Ruling on Objection to Admission of Evidence.*—It is not error to overrule an objection to the admission of evidence where no grounds of objection are stated.  p. 520.

4. DEEDS. — *Conditions   Subsequent. — Construction.* — Conditions subsequent in deeds are not favored in law and are strictly construed.  p. 523.

5. DEEDS.—*Construction.*—The language of a deed will be construed so as to ascertain, if possible, the intention of the parties, and where the deed admits of two constructions, the one least favorable to the grantor will be adopted.  p. 523.

6. DEEDS.—*Construction.—Defeasible Estates.—Conditions Subsequent.*—Where a conveyance of land to the trustees of a church recited that it was to be held in trust for the use of the members of such church according to its rules and discipline, and imposed no restraint on alienation and contained no provision for forfeiture in the event the property ceased to be used for church purposes, the recital that the grant was in trust for the uses and purposes therein set out did not create a defeasible estate nor condition subsequent for the violation of which a forfeiture or reversion would result, but was merely a directory provision enforceable at the instance of the church.  p. 524.

From Elkhart Superior Court; *Vernon W. Van Fleet,* Judge.

Action by Marvin Campbell and others as Trustees of the First Methodist Church of South Bend against Charles J. Taylor and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*T. E. Howard,* for appellants.

*Anderson, Parker & Crabill* and *J. S. Crumpacker,* for appellees.

ADAMS, P. J.—The appellees, as trustees of the First Methodist Episcopal Church of South Bend, Indiana, brought this action against appellants, to quiet their title in and to a certain lot in the city of South Bend, on which a church building occupied by the congregation of the First Methodist Episcopal Church is located. Appellees claim title in fee simple to the lot, by virtue of a deed to their predecessors in trust, executed December 6, 1848, by Edmund P. Taylor and Phebe S. Taylor, his wife.

The facts, about which there is no controversy, are that appellees, in their capacity as trustees of the First Methodist Episcopal Church of South Bend, desiring to change the location of their church edifice, on account of the growth of the city rendering the present location undesirable, by reason of such location being in the business section of the city, contracted to sell the present church building and the lot on which it stands, and reinvest the proceeds in a more desirable location, and to erect thereon a modern church building, provided they could convey a clear title to the lot on which the present church stands.

Appellants are the heirs and descendants of the grantors of said premises to appellees' predecessors in trust, and contend that under the provisions of the deed from their ancestors, title to said real estate will be forfeited and revert to them, if appellees sell and convey the premises in

controversy. This is the important and controlling question presented by the record before us.

The case was tried by the court, the facts were found specially, and the conclusion of law stated thereon favorable to appellees. Judgment on the conclusion of law, quieting appellees' title to the real estate in question.

Errors assigned and relied on for reversal are that the court erred (1) in its conclusion of law; (2) in overruling appellants' motion for a new trial.

The court found that appellees are the duly elected, qualified and acting trustees of the First Methodist Episcopal Church of South Bend, Indiana; that they are the successors in trust of John Brownfield, Albert Monson, William Stanfield, Charles M. Heaton and Francis R. Tutt, who were the duly elected, qualified and acting trustees of said church society on December 6, 1848, at which time the name of said society was "The Methodist Episcopal Church of South Bend, Indiana"; that all the property rights owned by and vested in said trustees are now owned by and vested in appellees as a body politic and corporate under the laws of the State of Indiana; that the deed executed by Edmund P. Taylor and wife to the trustees above named on December 6, 1848, is as follows:

"THIS INDENTURE, made the sixth day of December, in the year of our Lord, Eighteen Hundred and Forty-eight, between Edmund P. Taylor and Phebe Taylor, his wife, of the County of St. Joseph and State of Indiana, of the first part, and   *   *   *,   Trustees of the Methodist Episcopal Church of the Town of South Bend, County and state aforesaid, of the second part, WITNESSETH: That the party of the first part for and in consideration of the sum of Three Hundred and Twenty Dollars, lawful money to them in hand paid, the receipt whereof is hereby acknowledged, have given, bargained, sold, released, confirmed and conveyed, and by these presents do give, grant, bargain, sell, release, confirm and convey unto them, the said party of the second part, and their successors, and to the assigns of

the said party of the second part, or to the assigns of their successors, Trustees in Trust for the use and purposes hereinafter mentioned and declared, all that certain lot or tract or parcel of land, lying and being in the county aforesaid, and known and designated as lot numbered two hundred and fifty two (252) on the Original Plat of the Town of South Bend, County and State aforesaid, and all the estate, right, title, interest, property, claim and demand whatsoever, which the said party of the first part have in or to the lot or parcel of land aforesaid described. To have and to hold the lot and premises aforesaid, together with all the appurtenances aforesaid unto them, the said party of the second part, and their successors in office and the assigns aforesaid forever, in trust, that they shall erect and build or cause to be built thereon a house or place of worship for the use of the members of the Methodist Episcopal Church, in the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church at their general conference in the United States of America. And in further trust that they shall at all times forever hereafter permit such ministers and preachers belonging to the said church as shall from time to time be duly authorized by the general conference of the ministers and preachers of the said Methodist Episcopal Church, or by the annual conferences authorized by the General Conference, to preach and expound God's Holy Word therein. * * *"

The court found that the real estate was purchased and the deed executed to the trustees named under and in accordance with the regulations, by-laws and discipline of the Methodist Episcopal Church, duly adopted, promulgated and in force at the time said real estate was purchased and the deed therefor executed; that the church edifice erected on said lot in the year 1848, and remodeled in 1869, is within the business district of the city of South Bend, and is no longer suitable for church purposes and uses; that the present trustees have contracted to sell said lot and building, and that the sale of the same depends on their right to convey a good and sufficient title thereto; that the

intention and purpose of said trustees is to use the proceeds of the sale of the church property to purchase another lot in a favorable location for church purposes in the city of South Bend, and to erect thereon a suitable church building; that appellants assert and claim that on the sale of said real estate and on the cessation of the use thereof for church purposes, they will become vested with title to the same, as the heirs at law of the original grantors.

On the facts found, the court stated as its conclusion of law that appellees are vested with a fee simple title to said real estate, and have a good right to sell and convey the same, as they are proposing to do, and that any and all claims of the appellants and each of them in and to said real estate now, or upon a sale and conveyance thereof, are unfounded and without right, and are a cloud on the title of appellees, and that said title ought to be quieted in appellees as against appellants and all persons claiming by, through or under them.

Error assigned on the overruling of appellants' motion for a new trial calls in question the admission of certain evidence. At the trial, the court permitted appellees, over the objection of appellants, to offer in evidence section 2 of the doctrines and discipline of the Methodist Episcopal Church, in force at the time the deed was executed, which gives the form of deed to be taken in the purchase and conveyance of church property. The deed herein set out followed the form provided. The court also received in evidence, over appellants' objection, certain sections of the rules and discipline of the Methodist Episcopal Church, for the year 1908. It is unnecessary to set out this evidence, as no grounds of objection to its introduction are shown in the record.

1. It has often been held that only such reasons as are assigned in the trial court as objections to the introduction of evidence, will be considered on appeal. It is also the settled law of this State that an objection to the admis-

sion of evidence must be specific, and state the grounds of objection. *City of Garrett* v. *Winterich* (1909), 44 Ind. App. 322, 327, 328, 87 N. E. 161, 88 N. E. 308; *Hammond, etc., Electric R. Co.* v. *Antonia* (1908), 41 Ind. App. 335, 340, 83 N. E. 766; *Pichon* v. *Martin* (1905), 35 Ind. App. 167, 171, 73 N. E. 1009; *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541, 548, 70 N. E. 888; *Everitt* v. *Indiana Paper Co.* (1900), 25 Ind. App. 287, 290, 57 N. E. 281.

Action of the trial court in receiving the evidence of certain witnesses, that the church property is in the business district of the city of South Bend, and no longer suitable for church purposes, is also assigned as cause for a new trial. The record does not show that any grounds of objection were stated. There was, therefore, no error in overruling appellants' objection, for the reasons above set out.

All other questions raised by the assignment of errors are comprehended within the single issue, Did the deed to appellees' predecessors in trust convey a title which would revert to the grantors, or their heirs, on the sale of the property, or when it ceased to be used for church purposes?

Appellants contend that where lands are conveyed to trustees to be used as a place of worship by a religious society forever, a contract for the sale of the property for the purpose of reinvesting the proceeds in other property works a reversion in the grantor or his heirs, as of the date of such contract, citing in support, *Trustees, etc.,* v. *Alexander* (1898), 46 S. W. (Ky.) 503; *Scott* v. *Stipe* (1859), 12 Ind. 74; *Grissom* v. *Hill* (1856), 17 Ark. 483; *First Universalist Society* v. *Boland* (1892), 155 Mass. 171, 29 N. E. 524, 15 L. R. A. 231.

It is conceded by appellants that where lands are conveyed "for the use of" a certain grantee, or "to be used for" a definite purpose, the words are generally held to vest complete title in case the condition is once fulfilled; but where

lands are conveyed ''to be used forever'' or ''permanently'' for a given purpose, the title will fail and revert if the lands cease to be used for the purpose named in the instrument of conveyance. *Indianapolis, etc., R. Co.* v. *Hood* (1879), 66 Ind. 580; *Jeffersonville, etc., R. Co.* v. *Barbour* (1883), 89 Ind. 375; *Cleveland, etc., R. Co.* v. *Coburn* (1883), 91 Ind. 557.

We think these cases are easily distinguishable from the case at bar. In the case of *Trustees, etc.,* v. *Alexander, supra,* one Wallace devised twenty acres of land and a building to Forest Hill Church in perpetuity, as a place of worship. The court, in declaring the reversion, at page 504 said: ''The property was devised as a place of worship, and the title was given conditioned upon its use for that purpose, or, at least, upon its being applied to no other.'' It will be noted that the property devised in this case was dedicated to a certain use, which appears to have been the only consideration.

In the case of *Scott* v. *Stipe, supra,* the grantor conveyed the property to the use of the trustees of the Bethel Presbyterian Church and their successors in office forever, with the provision that whenever the land should cease to be used by the Presbyterians, then any minister of the Baptist or Methodist churches should have the privilege of using it as a place of worship. The consideration for the deed was '' 'the respect the grantors have for the institution of Christianity, and that the said Bethel Church may have a suitable place for erecting a house of worship.' '' At page 75 the court said: ''But the grant in this case was not only in trust; it was also upon a condition subsequent that a church should, within a reasonable time, be erected upon the lot, and forever thereafter be used as a house of worship, pursuant to the intention of the grantor.''

In *Grissom* v. *Hill, supra,* the conveyance was made for the purpose of promoting religion and morality, and was on the express condition that the lot was never to be sold or

to be used in any other way than for church purposes. That the trustees should carry out this object was the sole consideration for the grant. The court held that the trustees could not sell either directly or indirectly, and where the property was sold on decree foreclosing a mechanic's lien, the original grantor might recover possession.

In *First Universalist Society* v. *Boland, supra,* the deed provided that "when said real estate shall by the said Society or its assigns be diverted from the uses, interests and support aforesaid to any other interests, uses or purposes than as aforesaid, then the title of said Society or its assigns in the same shall forever cease and be forever vested in the following named persons." The court held that the grant was not on a condition subsequent, but that the deed created a determinable or qualified fee; that the limitation over was void for remoteness, and the land might revert to the grantor or his heirs on the determination of the estate granted.

In *Indianapolis, etc., R. Co.* v. *Hood, supra,* the land in question was conveyed to the railway company "for and in consideration of the permanent location and construction of the depot of said railway at Peru." This was the only consideration for the deed, and the court held that the breach of this condition subsequent worked a forfeiture of the railway company's estate, and rendered the property subject to be recovered back by the grantor or her heirs. It was also held that the condition subsequent was clearly expressed in the deed, although the word "condition" was not used therein.

In *Jeffersonville, etc., R. Co.* v. *Barbour, supra,* the conveyance recited that it was made "expressly for the use and purpose of depot grounds for the Madison and Indianapolis Railroad." After thirty-three years' use for such purpose, the railway company ceased to maintain a depot building thereon. The court held that the condition of the grant was that the grantee should locate and occupy the lots as depot grounds; that no time was mentioned, and that the language

of the deed strictly construed does not mean perpetuity, and
that the time of the occupancy was a substantial compliance
with the condition, and there could be no reversion.

In *Cleveland, etc., R. Co.* v. *Coburn, supra,* the land con-
veyed to the railway company was " 'for and in considera-
tion of the advantages which may or will result to the public
in general, and myself in particular, by the construction of
the Indianapolis and Bellefontaine Railroad as now sur-
veyed, or as the same may be finally located.' " The court
said: "In determining the question whether the estate
granted is one upon a condition subsequent, the court will
seek to enforce the intention of the parties, to be gathered
from the instrument and the existing facts.   *   *   *   We
therefore think that the relinquishment in controversy cre-
ated in the railway company an estate upon condition sub-
sequent, liable to be defeated upon the nonperformance of
the condition."

It is a rule of general recognition that conditions subse-
quent in deeds are not favored in law, and are strictly con-
strued. *Sumner* v. *Darnell* (1891), 128 Ind. 38, 43,
4.  27 N. E. 162, 13 L. R. A. 173; *Elkhart Car Works
Co.* v. *Ellis* (1888), 113 Ind. 215, 218, 15 N. E. 251;
*Jeffersonville, etc., R. Co.* v. *Barbour, supra; Hunt* v. *Bee-
son* (1862), 18 Ind. 380, 382.

In *Scott* v. *Michael* (1891), 129 Ind. 250, 28 N. E. 546, it
is held that where a deed will admit of two constructions,
the one least favorable to the grantor is to be adopted;
5.  that the deed must be construed so as to ascertain, if
possible, the intention of the parties, and that " 'in
trying to ascertain that intention, it is the duty of a court
to assume, as nearly as possible, the position of the contract-
ing parties, and to question the circumstances of the trans-
action between them, and then to read and interpret the
words which they used in the light of those circumstances.' "
See, also, *Truett* v. *Adams* (1884), 66 Cal. 218, 5 Pac. 96.

It will be noted that the deed in the case at bar was exe-

cuted for a consideration of $320. This is the only consideration shown, and there is no proof or finding that the consideration was not wholly adequate. The recital that the grant was in trust for the uses and purposes therein set out cannot be understood as creating a defeasible estate for the benefit of the grantor, but must be deemed to be directory to the *cestui que trust.* The recitals are insufficient to create a conditional estate. No technical words are used, which could be understood as creating a condition; no restraint was imposed on alienation, and there was no provision for forfeiture in event the property ceased to be used for church purposes. The trust provided for the doing of certain things without conditions expressed or inherent, except the implied condition of faithful performance on the part of the trustees, which might be enforced at the instance of the church, but not at the instance of the grantor. While the form of deed before us has not been construed by the Indiana courts, substantially the same deed has been passed on in other jurisdictions.

In the case of *Sellers Church Petition* (1891), 139 Pa. St. 61, 21 Atl. 145, 11 L. R. A. 282, the conveyance was to trustees and their successors in office forever. The consideration named was the sum of $50, and there being no evidence that the lot was of a greater value, the court held that a presumption arose that the lot was sold and conveyed for its full money value. The court said: "The building and ground having now become inadequate for the purposes of the congregation, they ask for a decree authorizing their sale free from the trust, the proceeds to be applied to the purchase of other ground and the erection of another church building thereon. The original purpose of the trust is preserved, and a new building is to be erected for the use of the same beneficiaries, on another lot in the same town. There is nothing in the terms of the trust which confines the trustees to the particular piece of ground described, and there is no breach of the trust created by the deed, alleged or proved,

against the allowance of the petition for the sale, except the erection of another building on another lot of ground. Passing by the question of the status of the exceptant, who is the widow of one of the grantors and a member of the church, to be heard against the petition, we recur to the more important question whether the title to the land would be invalidated by its abandonment for church purposes. It has been so many times decided by this court that a conveyance of land to trustees for a charitable use does not create a conditional estate, but only a trust for the charitable use, not liable to be defeated by nonuser or alienation, in the absence of an express condition, that a mere reference to some of the authorities is sufficient. *Wright* v. *Linn* [1848], 9 Pa. St. 433; *McKissick* v. *Pickle* [1851], 16 Pa. St. 140; *Griffitts* v. *Cope* [1851], 17 Pa. St. 96; *Pickle* v. *McKissick* [1853], 21 Pa. St. 232; *Barr* v. *Weld* [1854], 24 Pa. St. 84; *Brendle* v. *Congregation* [1859], 33 Pa. St. 415; *Methodist Church* v. *Old Columbia Public Ground Co.* [1883], 103 Pa. St. 608.''

In *Baldwin* v. *Atwood* (1854), 23 Conn. 367, the land was conveyed in trust for the use and purposes therein mentioned to the grantees and their successors in office forever. It was provided that the trustees shall ''at all times forever hereafter, permit such ministers and teachers, belonging to the Methodist Episcopal Church in the United States of America, as shall be duly authorized, from time to time, by the general conferences of the ministers and teachers of the said church or by the annual conference, authorized by the general conference to preach and expound God's Holy Word, in the house or place of worship which has been erected on the said land, for the use of the members of said church.'' The court said: ''There is an entire absence of not only any technical words, which impart a condition, but of any language whatever which goes, in the least, to shew that any defeasible estate was intended to be created, unless such intention is deemed to be evinced merely by the cir-

cumstance that the uses, for which the property is granted, are specified. But we have been referred to no case, and presume none can be found, where the mere declaration, in a grant, of the use to which the property shall be appropriated, has been held to import a condition. In this grant, moreover, it appears that it was made for a valuable consideration, proceeding from the grantees, or those for whose use it was made, and it is quite plain that it was made for the benefit of the latter, exclusively, and not that of the grantor.''

In *Fair* v. *Trustees, etc.* (1899), 57 N. J. Eq. 496, 42 Atl. 166, the right of the congregation to sell the old church site, and with the proceeds derived therefrom to build a new and larger church at a different location was questioned. The heirs of the grantor in that case, as in this, insisted that on a sale of the property, title would revert. The court said: ''I am satisfied that the trusts were declared entirely for the benefit of the church association, and their effect is simply to prevent the appropriation of the property conveyed to any purposes other than those specified in the deed. The trusts were strictly in accordance with the discipline of the church at that time, and it follows that the legal title, wherever it was held, was so held for the benefit of the unincorporated association known as the Bloomingdale Methodist Episcopal Church, and that that association, by and with the consent of the proper church authorities, and acting always in strict accordance with the discipline of the church, was empowered to make a conveyance of the church property.''

In *Adams* v. *First Baptist Church, etc.* (1907), 148 Mich. 140, 111 N. W. 757, 11 L. R. A. (N. S.) 509, 12 Ann. Cas. 224, the property was devised to the church ''to be used as a parsonage and nothing else, and to be kept for that purpose and used for nothing else.'' The words of the deed were held not to create a condition.

In *Strong* v. *Doty* (1873), 32 Wis. 381, substantially the

same form of deed used in the case at bar was construed, where the same claim of forfeiture on condition broken was raised. The court said: "There is no provision in the deed, that if the premises be abandoned as a place of worship the title shall return to and become vested in the donors. No subsequent violation of the trust upon which the property was held can ever revest either the legal or equitable title in them; although a palpable breach of trust might form a proper ground for an application to a court of equity, on the part of the parties interested, to compel a due execution of the trust."

· In *Neely* v. *Hoskins* (1892), 84 Me. 386, 24 Atl. 882, there was a provision in the deed that the property should be forever held for the use of the Protestant Episcopal Church at Old Town. The grantor was one Wadleigh, who on sale of the property claimed a reversion. The court said: "Undoubtedly the deed contains a condition for the benefit of the parish, but not for Wadleigh's benefit. It operates between the parish and the Bishop, and is not available otherwise. Every trust implies a condition that the trustee will faithfully administer the trust. Equity would enforce this trust at the instance and for the benefit of the parish. But the heirs of Ira Wadleigh could not complain. *Sohier* v. *Trinity Church* [1871], 109 Mass. 1." See, also, *Packard* v. *Ames* (1860), 16 Gray 327; *Farnham* v. *Thompson* (1885), 34 Minn. 330, 26 N. W. 9, 57 Am. Rep. 59; *Kilpatrick* v. *Graves* (1875), 51 Miss. 432; *Rawson* v. *Inhabitants, etc.* (1863), 7 Allen (Mass.) 125, 83 Am. Dec. 670; *Brown* v. *Caldwell* (1883), 23 W. Va. 187, 48 Am. Rep. 376.

On the foregoing well-considered cases, we are constrained to hold that the words used in the deed to appellees' predecessors in trust do not import a condition subsequent for the violation of which a forfeiture or reversion would result. We think the clear and manifest purpose of the conveyance in the form it was made was that the provisions of the trust might be executed according to the rules and discipline of

the church, and not for the benefit of the original grantors or their heirs.

The findings of the court were fully sustained by the evidence, and there was no error in the court's conclusion of law on the facts found.

The judgment is affirmed.

Hottel, C. J., Ibach, Myers, Felt and Lairy, JJ., concur.

NOTE.—Reported in 98 N. E. 657. See, also, under (1) 2 Cyc. 693; 38 Cyc. 1388; (2) 38 Cyc. 1375, 1378; (3) 38 Cyc. 1378; (4) 13 Cyc. 689; (5) 13 Cyc. 601, 609; (6) 13 Cyc. 687, 689. As to deeds for school, church or cemetery sites and appropriate restrictions, see 95 Am. Rep. 224. As to the breach of a condition subsequent in a deed and whether it revests the property *ipso facto*, see 93 Am. St. 572. For a discussion of words merely declaratory of the purpose or consideration of a conveyance or devise as creating a conditional estate, see 3 Ann. Cas. 38; 12 Ann. Cas. 227.