## MOORE v. COMBS.

[No. 2,995. Filed Jan. 25, 1900. Rehearing denied April 3, 1900.]

REPLEVIN.—*Fences.*—*Adjoining Landowners.*—Where defendant, an adjoining landowner, tore down the portion of a partition fence built and maintained by plaintiff and his grantors, and placed the rails upon his own land, without any intention to rebuild it, plaintiff may maintain an action to replevin the rails. *pp. 465-468.*

APPEAL AND ERROR.—*Instructions.*—*Must be Signed by the Judge.*— The provision of §533 Horner 1897, that "all instructions given by the court must be signed by the judge, and filed, together with those asked for by the parties, as a part of the record," is mandatory, and instructions not so signed cannot be considered on appeal, although they were filed and embraced in a bill of exceptions. *pp. 468, 469.*

From the Clinton Circuit Court.  *Affirmed.*

*J. J. Richards* and *W. S. Sims,* for appellant.
*O. E. Brumbaugh* and *J. Combs,* for appellee.

WILEY, C. J.—But one question presented by the record is discussed by appellant's counsel, and that is the overruling of the motion for a new trial.  The facts involved in the consideration of this motion are these:  Appellant and appellee were adjoining landowners; upon the line dividing their lands was a rail fence; appellant's land is immediately south of appellee's; a railroad passes through these lands in a northwesterly and southeasterly direction, and intersects the dividing line of the two tracts of real estate at a point almost in the center of such line from east to west.  While there is some conflict in the evidence on the question as to whether there was any agreement between the parties or their predecessors in the title that each should build, repair, and maintain certain portions of the fence, yet there is evidence in the record to support such agreement or arrangement, and that the parties acted accordingly.  On the part of appellee it is contended such was the agreement and arrangement, and that the same had been acted on by the parties and their predecessors in title for a great many years.  Upon this theory, appellee maintains that the east one-half of the fence was to be built and kept in repair by him, and the west half by appellant.  The evidence, with all reasonable inferences to be drawn from it, fairly shows that, acting upon such agreement or understanding, the east half of the fence was built by appellee and his predecessors in title out of rails made from timber on his land, and had been maintained and kept in repair by him; that the same facts existed as to the west line of the fence on the part of appellant, except that the fence had not been kept in repair. Appellee owned 160 acres of land, and until recently appellant owned but eighty acres, such eighty

acres corresponding to the east eighty acres of appellee. Appellant, in later years, had become the owner of the eighty acres immediately west of his original eighty, and appellee had built and maintained one-half of the fence between the west eighty of appellee and the west eighty of appellant. It is appellee's contention that that part of the dividing fence which was to be built and kept in repair by appellant was so badly out of repair that it would not turn stock, and, as he was using his land for pasturing cattle, he gave appellant notice, under the statute, to repair his part of the fence. A short time after, in the absence of appellee, appellant went upon the premises, tore down all that part of the line fence east of the railroad, and threw the rails over on his own land. At the time, appellee was pasturing his land with a large number of cattle, and after tearing down the fence, as indicated, appellant left the premises, and did not return. About four days thereafter appellee brought a replevin suit before a justice of the peace for the possession of the rails so taken from the fence. After trial before the justice of the peace, the case was taken by appeal to the circuit court. A trial there by a jury resulted in a verdict and judgment for appellee. Appellant's motion for a new trial was overruled, and such ruling is assigned as error. The reasons assigned for a new trial are that the verdict is contrary to law, and not sustained by sufficient evidence, and that the court erred in giving and refusing to give certain instructions.

The real question for determination is, does the record show that appellee had such an interest in the rails in question as would entitle him to maintain replevin for their possession? It is the theory of appellant that the fence which was taken down by him was a partition fence, belonging to him and appellee jointly, and that an action for replevin will not lie. On the contrary, appellee contends that the fence was built and maintained by him and his predecessors in title out of rails made from timber on his own land, under

Moore *v.* Combs.

an agreement or understanding that that part of the fence east of the railroad should be so built and maintained; and that that part of the fence west of the railroad should in like manner be built and maintained by appellant and his predecessors in title, and that such facts will authorize him to maintain replevin for the rails out of which the fence was made, after they had been wrongfully removed by appellant. There is much evidence from which the jury could, and doubtless did, find that such facts existed. There is also an abundance of evidence to the effect that that part of the fence east of the railroad was in fairly good repair, so that it would turn stock, while that portion west of the railroad was in poor condition, and would not turn stock. So it appears there was no immediate necessity for tearing down the fence east of the railroad for the purpose of re-building it, as is claimed by appellant is the purpose for which he tore it down. He took the fence down, threw the rails over on his own land, went away, and left it for some days; tore it down in the absence of appellee, without his knowledge, knowing at the time that appellee was pasturing a large number of cattle upon the adjoining land. The un-contradicted evidence further shows that the fence could have been rebuilt in about four hours. While there is no positive and direct evidence that he tore down the fence for the purpose of rebuilding it, as is claimed by appellant, there are many facts and circumstances disclosed by the evidence to contradict his statement, and from which the jury might reasonably infer that it was untrue. This question of fact was submitted to the jury, and they determined it by their verdict against appellant. The general rule prevails that, when a fence is constructed, it attaches to and becomes a part of the realty, and hence, as a fence, is not the subject of replevin, as replevin will only lie for the recovery of personal property. But the rule changes where a fence is torn down and the rails of which it is composed are removed, for in such case it ceases to be a fence; it is severed from the

realty, and the materials of which it is constructed becomes personal property. *Ricketts* v. *Dorrel*, 55 Ind. 470; 20 Am. & Eng. Ency. of Law, pp. 1062, 1063; *Ogden* v. *Stock*, 34 Ill. 522; *Davis* v. *Easley*, 13 Ill. 192; *Salter* v. *Sample*, 71 Ill. 430.

The only exception to this rule is where the rails or material of which the fence is constructed are removed for the sole purpose of rebuilding, in which event such rails or material do not lose their character as realty. 7 Am. & Eng. Ency. of Law, pp. 593, 906; *Ricketts* v. *Dorrel, supra.*

By §6564 Burns 1894, adjoining landowners may agree to build and maintain certain portions of a fence between their lands, and it is made the duty of each party to "build, rebuild, repair, and maintain the portion assigned to him." If this statute means anything, it means just what it says; and, when a fence is so built, it necessarily follows that the materials of which it is built belong to the party so building it, and the adjoining landowner has no interest in it, except such interest as the statute provides. Even the party building the fence could not remove it without giving the adjoining owner the statutory notice of his intention to remove it. Where, as in this case, the fence was wrongfully and tortiously removed, and the rails placed on the land of appellant, they became personal property, and the subject of replevin. There was no joint ownership in the rails removed from the realty as shown by the evidence. The rails were put into the fence by appellee or his predecessors in title. They were made of timber grown on appellee's land. The fence was maintained by him, and the evidence shows that, after it was torn down by appellant, appellee rebuilt it. There is evidence to sustain the verdict and judgment; and, as we can not disturb the judgment in such case, it must stand, unless the record shows some error for which a reversal should be ordered.

The only remaining question discussed by counsel for appellant is the giving and refusing to give certain instructions. We can not consider the question thus raised, for the

reason that the instructions are not in the record. While it is true that the record shows that the instructions were duly filed, and that they are embraced in a bill of exceptions, yet, such instructions were not signed by the trial judge. This is imperative, both by express provision of the statute and by the adjudicated cases. By subdivision sixth of §533 Horner 1897, it is provided that: "All instructions given by the court must be signed by the judge, and filed, together with those asked for by the parties, as a part of the record." In *Silver* v. *Parr*, 115 Ind. 113, in construing this provision, it was said: "This language of the statute is mandatory, and has been so construed by this court," citing *Childress* v. *Callender*, 108 Ind. 394.

In *Chicago, etc., R. Co.* v. *Hedges*, 105 Ind. 398, it was held that, when instructions are not signed by the trial court, they do not become a part of the record. See, also, *Port Huron, etc., Co.* v. *Smith*, 21 Ind. App. 233.

It follows from the statutes and the authorities that the instructions are not in the record, because they are not signed by the trial judge, and for this reason we can not consider them. The record, as it comes to us, does not disclose any error for which a reversal should be ordered. Judgment affirmed.