CITY OF FORT WAYNE *v.* CHRISTIE, ADMINISTRATRIX OF THE ESTATE OF CHRISTIE, DECEASED.

[No. 18,852.   Filed February 13, 1901.]

MASTER AND SERVANT.—*Personal Injury.—Knowledge of Danger.—Assumption of Risk.—Question of Fact.—Complaint.*—A complaint in an action for the death of plaintiff's decedent alleged that decedent was employed by defendant in a trench; that decedent was to do a certain part of the excavating, such part being six feet six inches deep, and two feet wide; that by orders of the superintendent the earth taken from the trench was piled near the edge thereof, and no precautions were taken to prevent the banks from falling in; that the earth was of such a character as rendered it liable to cave in and endanger the lives of workmen; that while decedent was engaged in his work other laborers were employed in digging bell-holes in the bottom of the trench, and without any knowledge on the part of decedent, the earth caved in upon decedent and instantly killed him. *Held,* that the questions as to decedent's knowledge of the danger and his assumption of the risk were for the determination of the jury. *pp. 174-179.*

SAME.—*Personal Injury.—Complaint.—Duty of Master as to Safety of Servant.*—A complaint against a city for the death of an em-

City of Ft. Wayne *v.* Christie, Adm.

ploye while working in a trench, caused by the banks falling in, is not bad because it does not expressly aver that the city owed to the deceased the duty of exercising any degree of care for his safety. *p. 179.*

MASTER AND. SERVANT.—*Vice-Principal.—Cities.*—The inspector of a city water-works while superintending the construction of a trench acted in the place of the city, and in the construction of such work represented the city to the fullest extent.    *p. 182.*

EVIDENCE.—*Personal Injury.—Master and Servant.*—In an action against a city for the death of an employe while working in a trench, caused by the earth caving in, the evidence of a fellow servant that he informed the superintendent that the trench was dangerous and liable to cave in was properly admitted.    *p. 183.*

INSTRUCTIONS.—*Words and Phrases.*—In an action against a city for the death of an employe while working in a trench, an instruction that in such cases the question was whether a man of ordinary prudence would regard the act as hazardous is·not objectionable as using the word "prudence" instead of the word "intelligence."    *pp. 184, 185.*

From the Allen Superior Court.    *Affirmed.*

*W. H. Shambaugh, J. M. Barrett* and *S. L. Morris,* for appellant.

*W. Leonard* and *E. Leonard,* for appellee.

DOWLING, C. J.—This is a suit by the appellee against the appellant for damages on account of the death of appellee's decedent caused by the caving in of a trench in which he was working. Demurrers to the several paragraphs of the complaint were overruled, and issues were formed upon a general denial. A trial by a jury resulted in a verdict for appellee. Motions by appellant for a new trial, for judgment in favor of the appellant on the answers of the jury to the ·questions of fact submitted to them, for judgment for the appellant on the evidence, and in arrest of judgment, were overruled.

The errors assigned, and not waived by the failure of counsel for appellant to discuss them, are the rulings on the demurrers, and on the motions for a new trial, and for judgment on the answers of the jury to the special interrogatories.

The complaint was in four paragraphs. The material allegations of the first, omitting the formal averments relating to the appointment of the plaintiff as administratrix, the family and next of kin of the deceased, the description of the appellant as a municipal corporation, and its ownership and use of a system of water-works were these: That the said city engaged the decedent to assist in the work of opening and constructing a trench along St. Joe boulevard, about 600 feet long, for the purpose of laying a water-pipe in it to furnish water to additional consumers; that the decedent, with a large number of other persons, was employed by the city as a common laborer to excavate the said trench; that the decedent was subject to the orders and direction of the city acting through its agent, the inspector of water-works and superintendent of said work, who had full authority over, and charge of, all the workmen engaged in excavating and constructing the said trench; that the decedent was ordered to do a certain part of the said excavating, such part being six feet and six inches deep, and two feet wide; that the other portions of the said work were performed by other workmen, to each of whom a section twelve feet in length was allotted; that, by the orders of the superintendent, the earth taken from the trench by the decedent and other laborers was carelessly and negligently thrown out and deposited, and piled to a great height, to wit, five feet upon one of the banks of the trench, and near the edge, no precautions being taken to brace the banks, or to secure them from falling in; that the upper stratum of the material of said street, to the thickness of two feet, was composed, largely, of compact earth, mixed with broken stone, the middle and lower portions of the trench being composed of loose earth used, a few years previously, to fill in said street, and, from its character, at the place where said earth was thrown out, liable to cave in, and endanger the lives of the men working in the said trench; and that these facts were well known to the city; that, while the de-

cedent was engaged in his work, and was in ignorance of the dangerous condition of the said banks, and the earth piled thereon, other laborers engaged in said work were ordered to dig large holes in the bottom and sides of said trench called bell-holes, without the banks of said trench being braced or secured in any manner; that said work was negligently and carelessly permitted by the superintendent, who had full knowledge of the dangerous condition of the said bank, and of the liability of the same to cave in by reason of the heavy mass of earth piled upon the edge, and the failure to secure the banks; that the other laborers dug such bell-holes carelessly and negligently as aforesaid, and, without any knowledge on the part of the decedent, and without time or opportunity to know or determine the dangers connected therewith, the earth caved in, and fell upon the decedent, crushing, and instantly killing him. It is also alleged that the caving in of the sides of the trench, and the injury to the decedent, were without fault on his part, and were due, solely, to the negligence of the city. The amended third paragraph of the complaint contains, substantially, the same averments as the first, and alleges the additional facts that the city failed properly to inspect the deposit of heavy masses of earth on the banks of the trench, and the probable result of doing such work; and that it neglected to warn the decedent of the dangers of the situation, although it had been advised of the same. The fourth paragraph is similar to the first, but it directly avers that the city, with full knowledge of the dangerous condition of the bank, and the probable result of piling earth on it, negligently did the work described.

The objections taken to each paragraph of the complaint are that it appears from their allegations that the nature of the work was such that the decedent, as a man of ordinary intelligence, must have known that it was dangerous, and that as it progressed it would become extremely hazardous. It is contended that the decedent must have known that the

earth excavated would have to be thrown out, and that the trench was liable to cave in; and that the deceased was bound to know that the bell-holes were incidental to the main work.    It is also insisted that the complaint is bad because there is no averment of any duty on the part of the appellant to the decedent, or of its violation by the appellant; that such work as was performed by the decedent had its own peculiar hazards for which the appellant cannot be held responsible.    The sum of the objections to the complaint is that the liability of the banks of the trench to cave, or fall in, by reason of their own gravity, and because of the excavations for the bell-holes, was an obvious hazard incidental to work of that kind, and that the risk therefrom was assumed by the deceased.

The rule that a servant assumes such risks of his employment as are apparent, or are incidental to it, is to be considered in connection with the more general principle which requires that the master shall provide for the safety of his servant.    In referring to risks which are assumed by the servant, the courts have often described them as "apparent", or "palpable", or "open to common observation", or as "risks and perils commonly incident to the particular service", or "perils which could be discovered by the exercise of ordinary care."    But, in every instance, the question whether the risk is visible, palpable, commonly incident to the particular service, or discoverable by the servant by the exercise of ordinary care, is one of fact, and not of law, and is to be determined by the jury and not by the court.    The same is true as to the servant's knowledge of the dangers of his employment, and whether, either expressly or impliedly, he contracted to run the risk. It may be observed that an agreement on the part of the servant to assume the risk cannot, in all cases, be presumed from mere knowledge of its existence.    *Consolidated Stone Co.* v. *Summit,* 152 Ind. 297.    It is only where the person injured, knowing and appreciating the danger, voluntarily

encounters it, that such knowledge is a defense.   It is said, however, that knowlege is a material fact for the considera- tion of the jury in determining whether, under all the cir- cumstances, the plaintiff was guilty of contributory negli- gence.

In the present case, we cannot say, from an examination of the complaint, that the employment into which the de- ceased entered was a hazardous one.   Neither will the facts pleaded justify the inference that the perils of the em- ployment, if there were perils attending it, were visible, or palpable, or that they could have been discovered by the exercise of ordinary care by the deceased.   Whether the work of digging a trench is dangerous, or otherwise, would seem to depend upon a variety of circumstances.   In some cases, it might be hazardous; in others, entirely safe.   The dimensions of the trench might have something to do with it.   The nature of the soil would certainly have some influ- ence.   The presence of sand, gravel, or quicksand, or of earth newly filled in, the moisture or dryness of the ground, and many other natural or artificial conditions might render the work of digging a trench more or less safe, or more or less hazardous.  The state of the weather or the season of the year when the work was being done might affect it.   All these are matters of fact.   Some of them, perhaps, might be shown to be matters of scientific knowledge, demanding the attention of a civil engineer, or other expert.   Then, too, the work of excavating a trench might be safe, at least to such an extent as to justify a workman in undertaking the employment, and yet, it might, afterwards, be rendered extremely dangerous by other lateral excavations made dur- ing the progress of the work by the order or under the direc- tion of the master.   Under such circumstances, it could not be said, as a matter of law, that the servant assumed the additional risk caused by such lateral excavations, in the absence of averments that he knew they were being made,

and that he knew that they did increase the liability of the sides of the ditch to fall in. Nor can it be said that the deposit of the earth excavated, on the surface of the ground, and near the edge of the trench, created so obvious a peril that the workman was put to the alternative of voluntarily incurring the risk, and waiving all claim for damages against his employer, or quitting his work. The effect of such deposit as an element of danger was a fact to be considered by the jury, and it was for them, and not for the court, to say what inferences should be made from it. It also appears from the complaint that the upper stratum of the material of the street in which the excavation was being made, to the thickness of two feet, was composed largely of compact earth mixed with broken stone, and that the middle and lower strata were formed by the deposit of loose earth placed there some years before, and liable to cave in. Here, too, is a fact, or a state of facts which is especially for the consideration of the jury. The court cannot decide, as a matter of law, that from the nature of the soil of the street the danger of caving in was palpable, or discoverable by the exercise of ordinary care, or that the dangers resulting from it were of such a character that the laborer was bound to take notice of them. In determining the sufficiency of the complaint, it is to be borne in mind that, in connection with all these averments in respect to the particular circumstances of the case, it is expressly averred that the dangers of the employment were not known to the deceased, and that he had no knowledge of the digging of the bell-holes, or time to escape from the trench after they were dug. These averments of want of knowledge are, by the demurrers, admitted to be true. It seems very plain to us that there is nothing in the complaint which compels us to presume, conclusively, as matter of law, that the deceased knew that the work was hazardous, and that, knowing and appreciating the dangers, he voluntarily encountered them.

It is asserted, in the next place, that the complaint was insufficient because it did not expressly aver that the city owed to the deceased the duty of exercising any degree of care for his safety. Such an averment would have been the statement of a legal conclusion only, and, therefore, improper and unavailing. The circumstances set forth in the pleading described the character of the work to be performed, and the relation between the parties, and from these facts the law implies the duty of the master to make reasonable provision for the security of his servant. Under the circumstances narrated in the complaint, the employer and the laborer did not stand upon an equal footing either as to the means of knowlege of the hazards of the employment or the use of appliances for the prevention of accident and injury. The employer had the benefit of the professional skill and experience of its civil engineer and other officers. It could have braced or propped the sides of the trench. If found necessary, the sides of the excavation might have been sloped instead of having been made perpendicular. Perhaps, by an examination of the soil, during the progress of the excavation, a civil engineer, or other person experienced in such work, might have been able to determine just when and where it would become necessary to put in timbers or braces. The failure of the city to adopt any measures for the protection of the laborers in the trench must be taken as indicating one of two things, either that the representatives of the city mistakenly considered the trench safe, and the work free from hazard, or that they were indifferent to the safety of the workmen. The appellant asks us to decide that the laborer was bound to recognize, or discover, the perils of the situation, if they existed, and to quit his employment, or assume the risk. The averments of the complaint do not indicate that the work was dangerous, and that its hazardous character was apparent to a common laborer, or discoverable by him by the exercise of ordinary care. The disastrous result shows that the work

of excavating this particular trench was highly dangerous, and indicates that precautions should have been taken to prevent the caving in of the earth. The rule as to the duty of discovering the hazards of such work is not the same as to the master and the servant. The master is generally held to a higher degree of responsibility, because his means of knowledge may fairly be presumed greater and more reliable, while the servant may not have the requisite skill to discover the perils of the undertaking. Looking to the averments of the complaint alone, it may be justly inferred that the city owed to the deceased the duty of exercising some care to protect him against the caving in of the banks, and that its failure to discharge this duty rendered it responsible for the consequences of its neglect. These views are not inconsistent with the principles stated in the cases referred to by counsel for appellant.

City of Minneapolis v. Lundin, 58 Fed. 525, 7 C. C. A. 344, differs so much in its facts that it affords no aid to the correct decision of the present case. There, during the construction of a sewer, it became necessary to blast rocks. The foreman of a gang of men, who was not a vice-principal, failed to notify a workman that a dynamite cartridge had not been discharged. An explosion of the cartridge afterwards took place accidentally, and the workman was injured. It was properly held that the city was not liable.

The doctrine stated in Gulf, etc., R. Co. v. Jackson, 65 Fed. 48, 12 C. C. A. 507, applies to a totally different class of cases, such as the tearing down of buildings, or other structures, which have become unsafe. In work of this character, the servant undoubtedly assumes the increased hazard growing out of the defective or insecure condition of the place where he is required to exercise his calling.

Railsback v. Turnpike Co., 10 Ind. App. 622, was a case where the employment appeared, necessarily, to be dangerous.

Finalyson v. Utica Mining, etc., Co., 67 Fed. 507, 14

C. C. A. 492, holds that the servant assumes the ordinary risks of his employment, which are known to him, or which might be known to him, by the exercise of ordinary care and foresight. Therefore, when he engages in the work of making a place that is known to be dangerous, safe, or in a work which in its progress necessarily changes the character or safety of the place in which it is performed, as the work progresses, the hazard of the dangerous place, and the increased hazard of the place made dangerous by the work, are the ordinary and known dangers of such place, and by his acceptance of employment the servant necessarily assumes them.

We find nothing in *Armour v. Hahn,* 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440, which conflicts with the views expressed in this opinion. *Texas, etc., R. Co. v. French,* 86 Tex. 96, 23 S. W. 642, and *Railroad Co. v. Lempe,* 59 Tex. 19, 22, were cases where the danger was open to the observation of the servant, and was as well known to him as to his employer. *Evansville, etc., R. Co. v. Duel,* 134 Ind. 156, *Ames v. Lake Shore, etc., R. Co.,* 135 Ind. 363, and *Bedford Belt R. Co. v. Brown,* 142 Ind. 659, decide that where the hazard is known and assumed by the servant, or where he is guilty of contributory negligence, there can be no recovery. In this connection see *Wabash R. Co. v. Ray,* 152 Ind. 392. No principle is asserted in any of these cases which sustains the position of the appellant in its attack upon the sufficiency of the complaint now before us.

In the case of *Vincennes Water Co. v. White,* 124 Ind. 376, it was with reference to the evidence, and not the pleadings, that the court said that the liability of the trench to cave in by reason of the peculiarity of the soil, and the danger attending the work, were open alike to the observation of all the parties, and that it had been held repeatedly that, under such circumstances, there could be no recovery.

In *Swanson v. City of Lafayette,* 134 Ind. 625, the com-

plaint showed the fact that the danger of the employment was obvious, and equally open to the observation of the master and the servant.

In Griffin v. Ohio, etc., R. Co., 124 Ind. 326, it appeared from the complaint that the plaintiff was employed to undermine a bank of gravel and clay. The bank caved in, and injured the plaintiff. A demurrer was properly sustained to the complaint.

The decision in the case of Diamond Plate Glass Co. v. DeHority, 143 Ind. 381, certainly goes to the extreme length of the doctrine of the assumption of risk by the servant, but we do not regard it as of controlling weight in the present inquiry.

The next question presented relates to the sufficiency of the evidence to sustain the verdict. Counsel for appellant contend, in the first place, that the proof shows that the dangers of the employment were apparent, or, that they could have been discovered by the deceased by the exercise of ordinary care, and, therefore, that they were assumed by him. As we have already stated, these were strictly questions of fact, and a full and careful scrutiny of the record satisfies us that there was evidence which authorized the verdict.

It is next asserted that Mr. Iten, the inspector of waterworks and superintendent of the construction of the trench, was not a vice-principal, and that the city was not responsible for his acts. We think the evidence leaves no room for doubt as to his authority. He was acting in the place of the city, and in the construction of this work he represented the city to the fullest extent.

Again, the position is taken that the deceased was an independent contractor, that he had control over the section of the work assigned him, and that the city was not bound to provide in any manner for his safety, while performing the work. The proof conclusively shows that he was a common laborer, working with many others under the direction of

Mr. Iten, the inspector and superintendent, that he had no authority over or discretion as to his work, and that he was ordered to dig out a certain part of the. trench, and proceeded to do it.   The nature of the excavation required that the laborers should be distributed along its line, and in pursuance of this arrangement the deceased was merely shown on·what part of the trench he should work.   Not a word in. the record supports the statement that. he was an independent contractor.

It is objected, in the next place, that the court erred in permitting counsel for appellee to ask one Martin Fisher the following question:   "What; if anything, did you say: to Iten about the trench being dangerous, or in a dangerous condition to dig bell-holes in it, if you did say anything on that subject ?"   Iten was the inspector of water-works, and the official representative of· the city in the supervision of of the work of excavating. the trench.   .Express notice ·to him that the trench was dangerous, or that it would be unsafe to dig bell-holes in it, was competent.   Such a communication was entirely. relevant to the subject of the action, and the weight of·the testimony elicited was a. question for the jury.   It was not objectionable.on the· grounds that it called only for the expression of an opinion.   .If the superintendent was informed that. the .trench was danger-ous, or that it would· be unsafe to dig bell-holes in it, such information was. certainly sufficient. to arrest his attention, and to demand some examination on his part as to the condition of the work.   In answer to another question, the same witness, Fisher, stated:   "I said, I don't like .to go. back there on account, I said, I think it is dangerous.   I said, I never done any of that kind of work, and I·would rather not go back."   The answer was properly. admitted.   When this statement. was made to the superintendent, the work was in progress.   The safety of seventy men was at ·stake. No rule of law required the witness to communicate the information in a technical form.   If Mr. Iten did not know.

before that the lives of all the workmen were in danger, this communication ought to have aroused him to some effort for their protection or escape.

The question presented by the exception to instruction number two, given at the request of the appellee, has already been determined by the view we have taken of the defense that the deceased was an independent contractor. The instruction correctly stated that it was the duty of the master to use ordinary care and skill to make and keep the place where the deceased was working in a reasonably safe condition, and that the deceased assumed only the hazards incident to the work. The evidence fully justified the court in giving the instruction as asked for. The objection that it did not apply to the case, because the deceased was an independent contractor, was wholly without merit.

The appellant has failed to observe the rule of this court which requires that, in discussing an instruction, its number, with the page and lines of the record where it appears, shall be set out, together with a succinct statement of the substance of the instruction, and the specific objections to it, where objections are urged. Rule twenty-five. However, we have examined instructions numbered three, four, and four and one-half, and have found them unobjectionable. The point made upon instruction number four and one-half is that the court should have told the jury that in this class of cases the question is, "whether a man of ordinary intelligence would regard the act as hazardous, instead of saying, a man of ordinary prudence." We think the latter the better and more correct term. Prudence is, usually, one of the results of intelligence. It is said to be. "wisdom applied to practice", and it may be described as intelligence combined with caution. A merely intelligent man might be a very rash or imprudent person. We are of the opinion that the evidence shows that the deceased was free from contributory fault, and that the accident and injury were properly and reasonably chargeable to the negli-

gence of the city and its representative having the supervision of the work of excavating the trench.

It is not necessary to review at length the answers of the jury to the special interrogatories. It is sufficient to say that there is nothing in them inconsistent with the general verdict. Indeed, they firmly sustain it. The only objection made to their consistency with the general verdict is the groundless assertion that they show that the deceased was an independent contractor. There is, as we have before said, nothing in this position. Finding no error, the judgment is affirmed.