## AVERY v. NORDYKE & MARMON COMPANY.

[No. 4,556.   Filed April 28, 1904.   Rehearing denied June 29, 1904. Appeal to Supreme Court dismissed February 2, 1905.]

1.   APPEAL AND ERROR.—*Bill of Exceptions.—Narrative Form.*— Where a bill of exceptions was duly signed and filed, the fact that the evidence therein is set out in narrative form is no reason that such bill should be disregarded.   p. 545.

2.   SAME.—*Bill of Exceptions.—Transcript.—Conflict as to Date of Trial.*—Where the bill of exceptions shows that the evidence in the cause was introduced on January 29, 1902, and the transcript shows the trial was held on January 23, 24, 27, 28 and 29, 1902, the date of the bill controls.   p. 545.

Avery *v.* Nordyke & Marmon Co.

3. APPEAL AND ERROR.—*Bill of Exceptions.*—*Official Reporter.*—It is not necessary that the bill of exceptions shall be transcribed by the official court reporter.   p. 545.

4. SAME.—*Bill of Exceptions.*—*Evidence Not All in Record.*—Where the bill of exceptions shows that a witness testified, "I did not notice any difference between that rick and others, in the mode of piling, etc.," and the bill recites that "this was all the evidence given in the case," such bill does not show that other evidence was introduced, as the bill shows that "etc." was used by the witness.   p. 546.'

5. SAME.—*Bill of Exceptions.*—*Objections to Approval by Judge.*— What shall be contained in a bill of exceptions is a matter exclusively for the trial judge, and objections made by a party to his approval are unavailing.   p. 546.

6. SAME.—*Transcript.*—*Precipe.*—*Original Bill of Exceptions.*— Where appellant by his precipe directs the clerk to make a transcript in a certain cause, it is the duty of the clerk to make a complete transcript, and under the act of 1903 (Acts 1903, p. 338, §7) the original bill of exceptions may properly be included therein.   p. 546.

7. SAME.—*Bill of Exceptions.*—*Instructions.*—*How Made Part of Record.*—Where instructions are incorporated into the bill of exceptions it is not necessary for the judge to sign marginal exceptions thereon.   p. 546.

8. EVIDENCE.—*Impeachment of Witness.*—*Grounds.*—Where, in the trial of a cause by a servant against his master for personal injuries, objection was made to evidence tending to impeach a witness, on the grounds (1) that notice to such witness would not be notice to the master; and (2) the evidence was incompetent, irrelevant and immaterial, and on appeal such evidence was assailed because it was an attempt to impeach a witness on a collateral and immaterial matter brought out on cross-examination, no question is presented, since the question on appeal was not passed upon by the trial court.   p. 547.

9. SAME.—*Dangerous Place.*—*Notice to Foreman.*—*Verbal Statements.* —Where notice to the master of a dangerous place is material, in an action by the servant for personal injuries, evidence of the statements made by an employe to the foreman of such master on informing such foreman of such dangerous place is admissible.   The notice being competent, the statement accompanying it is also competent.   p. 548.

10. MASTER AND SERVANT.—*Assumed Risk.*—*Obvious Dangers.*—The doctrine of assumed risk depends upon an implied contract created, in the case of an obvious danger, from the voluntary act of the servant in continuing in the employment.   p. 549.

11. SAME.—*Assumption of Risk.*—To charge a servant with an assumption of the risk of a danger it must be shown that such servant not only knew of the defect, but also appreciated the danger therefrom.   p. 550.

12. SAME.—*Assumed Risk.*—*Obvious Danger.*—*Evidence.*—Where the evidence is conflicting the question whether the servant knew of de-

Avery *v.* Nordyke & Marmon Co.

fects not incidental to his work, and appreciated the dangers arising from such defects, is one for the jury.    p. 551.

13.   MASTER AND SERVANT.—*Assumption of Risk.—Knowledge of Danger.*—Where the servant merely knows that there is some danger, but does not fully appreciate what the danger really is, he does not assume the risk thereof.    p. 553.

14.   TRIAL.—*Instructions.—"Defect."—"Danger."*—Where there is a question of assumed risk submitted to the jury, the distinction between "defect" and "danger" should be clearly made known by proper instructions.    p. 553.

15.   SAME.—*Knowledge of Danger.—Evidence.*—Where from the nature of the defect and dangers arising therefrom there can be but one inference as to the servant's knowledge and appreciation thereof, the assumption of such risk is a question of law for the court, but where diverse inferences may be drawn from the facts, it is a question for the jury.    p. 553.

16.   MASTER AND SERVANT.—*Assumed Risks.—Dangers Out of Line of Duty.*—Where a servant is at work where there are obvious dangers arising from defects out of his line of employment, he will nevertheless assume such risks by continuing in the service.    p. 556.

17.   TRIAL.—*Negligence.—Dangerous Works and Ways.—Instructions.*—Where it is charged that defendant was negligent in piling a rick of pig iron near the place where the servant was working, and that such iron fell on such servant, inflicting injuries, and the answers to interrogatories fail to show that there was no negligence therein, such answers do not absolve the master from the charge of negligence, and render harmless an instruction relative to assumed risk.    p. 557.

18.   TRIAL.—*Interrogatories Outside of Issues.*—Where an interrogatory asks for a fact which is outside of the issues in the case, the answer thereto can not be considered.    p. 557.

19.   SAME.—*Interrogatories.—Conclusions.*—Where the answer to an interrogatory was that "the work was carefully done," such answer is a conclusion, and can not be considered.    p. 558.

20.   WORDS AND PHRASES.—"Care" and "carefulness" are antonyms of "neglect" and "negligence," and are conclusions.    p. 558.

21.   TRIAL.—*Interrogatories.—Conclusion.*—An answer to an interrogatory that "the men piling the iron exercised ordinary and reasonable care" is a conclusion, and can not be considered.    p. 558.

22.   EVIDENCE.—*Comparison of Alleged Negligent Act With Others Not Negligent.*—Where it is alleged that the negligent act of defendant consisted in piling a rick of iron, evidence of piling other ricks is not admissible.    p. 558.

23.   TRIAL.—*Interrogatories.*—An answer to an interrogatory that defendant "did not know the rick was dangerous" is not equivalent to a finding that defendant used reasonable care to provide a safe working place.    p. 558.

24. EVIDENCE.—*Opinion.*—Where there is no charge of wilfulness, what the employes thought about the safety of a rick, alleged to have been negligently piled, is outside of the issues. p. 558.

From Superior Court of Marion County (61,369); *Vinson Carter,* Judge.

Action by George R. Avery against the Nordyke & Marmon Company. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Wymond J. Beckett* and *Henry M. Dowling,* for appellant.

*Elmer E. Stevenson* and *Edward H. Knight,* for appellee.

ROBY, J.—Action to recover damages for personal injury. The amended complaint was in one paragraph. Its averments, summarized, are to the effect that the defendant corporation is a manufacturer of milling machinery in Indianapolis; that on August 24, 1900, appellant was working for it in its factory, cleaning or smoothing the rough places off of milling machinery; that this was his chief duty, and that, to perform it, he was required by appellee to place said machinery or castings upon a truck which ran into said factory, and such truck was then run out of the building into appellee's yard, where it was the custom and appellant's duty to clean and smooth the castings while thereon; that on said day appellant was working at his usual and customary duties in cleaning and smoothing castings upon said truck in said yard, without negligence on his part; that appellee had negligently piled, or caused to be piled, near said track and appellant's working place, pig-iron in ricks parallel with said track and near thereto; that said iron had been piled too near said track, too high, and in an unsubstantial and negligent manner, making said ricks dangerous and likely to fall, thereby rendering appellant's working place dangerous; that appellant was engaged at his work as aforesaid, with his back to said ricks, and in said place as aforesaid, without fault on his part, and without knowledge

that they would fall on him and injure him, but said appellee knew, or ought to have known, that said ricks of pig-iron would fall on and injure him; that on said day appellant was working, cleaning castings, in his usual place, and that by the negligence of the appellee the rick of pig-iron fell on him, to his damage, etc. The issue was formed by a general denial, trial and verdict for appellee, motion for new trial overruled, and judgment rendered on the verdict.

The error assigned is in overruling the motion for a new trial. In support of the assignment, appellant has argued questions relating to the admission of evidence, the giving of certain instructions, and the refusal to give others requested.

1. Preliminary to the consideration of these, it must be determined whether the bill of exceptions containing the evidence and the bill of exceptions containing the instructions are in the record. The bill purporting to contain the evidence was duly signed by the trial judge, duly filed, and certified to this court. The statement therein contained is in narrative form. We are not authorized to disregard it for that reason. *Weakley* v. *Wolf* (1897), 148 Ind. 208; *Grisell* v. *Noel Bros., etc., Co.* (1893), 9 Ind. App. 251.

2. The bill states that the evidence was introduced on the 29th day of January, 1902. The clerk's transcript shows that the trial was had on the 23d, 24th, 27th, 28th and 29th days of January, 1902. The statement of the bill of exceptions as to dates controls where there is a discrepancy between it and the record made by the clerk. *Alley* v. *State, ex rel.* (1881), 76 Ind. 94, 95; *Indiana, etc., R. Co.* v. *Adams* (1887), 112 Ind. 302, 303; Ewbank's Manual, §34.

3. The evidence, as incorporated in the bill, does not purport to have been transcribed by the official reporter. It is not necessary that it should be so transcribed. *Adams* v. *State* (1901), 156 Ind. 596-600; *Tombaugh* v. *Grogg* (1901), 156 Ind. 355-358.

4. A part of the testimony of one witness is set out in the bill as follows: "I did not notice any difference between that rick and others, in the mode of piling, etc." It is argued that this shows affirmatively that all of the evidence is not in the record. The answer purports to be that of the witness, and the abbreviation must be treated as having been used by him. The bill recites: "This was all the evidence given in the case." It does not on its face show that other evidence was introduced, and it is therefore sufficient. Ewbank's Manual, §34, p. 48.

5. Appellee filed written objections to the bill of exceptions before it was signed and filed, giving therein specific reasons, supported by affidavit, why, in its opinion, the bill should not be authenticated. Such objections were overruled, and is shown by the bill of exceptions presented by appellee. What shall be contained in the bill is a matter exclusively for the trial judge to determine. *Jelley* v. *Roberts* (1875), 50 Ind. 1. The rulings upon the various objections made as aforesaid do not authorize this court to disregard the bill as settled.

6. Appellant, by precipe, directed the clerk to make out a transcript for appellee. No specific directions as to any particular part of the record were given, and it thereby became the duty of the clerk to make out and deliver or transmit a complete transcript. §661 Burns 1901, §649 R. S. 1881; *Barnes* v. *Pelham* (1897), 18 Ind. App. 166-168. The original bill of exceptions containing the evidence constitutes and is considered a part of the transcript. Acts 1903, p. 338, §7. The certificate of the clerk was in due and regular form. Acts 1903, *supra*.

7. The instructions having been incorporated in the bill of exceptions, it was not necessary for the trial judge to sign marginal exceptions thereon. *Moore* v. *Combs* (1900), 24 Ind. App. 464, cited and relied upon by appellee, does not control. *Ayres* v. *Blevins* (1901), 28 Ind. App. 101. The bills of exceptions are properly a part of the record.

The appellant, when injured, was engaged in cleaning a casting which was on a truck standing in the usual and proper place. He received his orders from one Linneman, boss of the department in which he was employed. Appellee's employes, working under the direction of the foreman of the "piling gang"—a distinct department of its business —on the day before had been piling pig-iron in ricks twenty-eight inches south of and along the track upon which said truck and castings stood at the time of the accident complained of. On the morning of the accident, such work was resumed. Appellant was not subject to the orders of the boss of said "piling gang." The separate pieces of pig-iron so piled were from six inches to two and one-half feet long, and three or four inches in diameter, and were rough on the sides and ends. The particular rick that fell upon appellant was piled to a height of from seven to eight feet. It had just been completed, and a new one begun, when it fell. Properly piled, the rick would have been safe, and the fact that this one fell indicated that it was not piled right. There was a conflict in the evidence relative to the foreman's knowledge that it was dangerous.

8. A witness called by appellant, who was one of the gang that piled the iron, testified that the rick looked dangerous, and quivered whenever a piece of iron was thrown upon it, and that thirty minutes before it fell he told the foreman in charge that the pile looked dangerous. On cross-examination he was asked if he said anything to the men he was working with about the pile looking dangerous. He answered: "Yes, before I went to see Foggleson [the foreman], I made the remark that it looked dangerous, and that I would go and see him." Thereafter appellee called one of the men with whom the witness was working, and asked whether said first-named witness said anything to him about the rick looking dangerous or liable to fall. Appellant contends that his objection to this question should have been sustained, stating the proposition that a witness

can not be impeached upon immaterial and collateral mat-
ters testified to by him upon cross-examination.    The objec-
tion to the testimony stated at the trial was based upon other
grounds than these argued, i. e., that notice to the witness
would not be notice to the defendant; that the evidence was
incompetent, immaterial and irrelevant.    Only such grounds
of objection to the admission of evidence as are presented
to the trial court can be insisted upon in this court.    *Everitt*
v. *Indiana Paper Co.* (1900), 25 Ind. App. 287.

9.    There was, however, no error in admitting the evi-
dence.    It was competent to prove what the witness did
with reference to conveying notice of the dangerous charac-
ter of the rick to the foreman, appellee's representative.
Where it is competent to prove the act, it is competent to
prove the statement accompanying it as part of the *res
gestae* of such act.    *McConnell* v. *Hannah* (1884), 96 Ind.
102; *Boone County Bank* v. *Wallace* (1862), 18 Ind. 82-
85; *Creighton* v. *Hoppis* (1885), 99 Ind. 369-371.    The
testimony elicited upon direct examination tended to show
that the witness conveyed notice to the foreman of the defect.
It being relevant to prove what he said upon the subject
and what he did in the respect indicated, all that he did
and said at the time became relevant.    The legal proposi-
tion stated by appellant is abstractly correct, as shown by
the authorities cited, but it is not applicable to the facts.

The ninth instruction given to the jury was as follows:
"When a servant engages in the employment of a master,
he thereby assumes all such risks of injury as are incidental
and necessarily attend and attach to the kind of work for
which he was employed.    He also assumes all dangers and
risks as are open, obvious and apparent, or which, by the
exercise of reasonable and ordinary care, he could have
ascertained and known of.    The meaning of this doctrine of
assumption of risk amounts to this:    That when a servant
engages in an employment which is necessarily attended
with some risk or danger, or if, while he is engaged in such

employment, he becomes aware of danger or risks, although not incident to the employment in which he is engaged, or such dangers are so apparent that he ought to observe and know of the same, if he use ordinary care, and, with such knowledge or means of knowledge, he continues on in his work, and is injured by reason of any such dangers above named, then for such injuries the servant will not be entitled to recover." By the eleventh instruction given, the questions as to whether there was "any defect or danger in the place where plaintiff was required to work," "whether such danger, if any, was incident to the employment," and "whether the danger or defect was known and obvious," were submitted to the jury.

10. Appellant requested that the jury be instructed as follows: "The rule that a servant assumes such risks of his employment as are apparent or incidental to it is to be considered in connection with the more general principle which requires that the master shall provide for the safety of his servants. It is a question for you to determine, under the facts of this case, whether the risks or danger, if any, to the plaintiff's working place, was visible, palpable, incident to the particular service, or should have been discovered by the plaintiff in the exercise of ordinary care. An agreement on the part of the servant to asume the risks of danger to his working place can not be conclusively presumed from mere knowledge of its existence. It is only where the person injured, knowing and appreciating the danger, voluntarily encounters it, that such knowledge is a defense. The knowledge, however, is a material fact, if it exists, for your consideration in determining whether, under all the circumstances, the plaintiff assumed the risk or was guilty of contributory negligence." The instruction refused is based upon and follows the language of the opinion in City of Ft. Wayne v. Christie (1901), 156 Ind. 172, 176. It is conceded that "It is not enough that a servant should know of a defect alone, for his experience or ignorance may be such

that the risk or danger attending such defect would not be understood, and therefore not known to him. He must know of the danger, and once knowing it he is charged with all the risks springing from knowledge thus obtained. It would be a travesty on justice, indeed, to permit a servant to escape this rule of law by claiming that, although he knew the danger, yet he did not appreciate it. He might properly assert that he knew of the defect, but did not appreciate the danger therefrom." The instructions given are not so clear in distinguishing knowledge of defect and knowledge of danger as the above-quoted extract from the very exhaustive and able argument made by appellee's counsel, but, although the instructions given be considered as a correct exposition of the law, so far as they go, the exception to the one refused presents the question involved in appellant's proposition. The doctrine of assumed risk depends upon an implied contract created, in the case of obvious danger, from the voluntary act of the employe in continuing in the service. *Wortman* v. *Minich* (1901), 28 Ind. App. 31; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319.

11. There can be no room for implying such contract except where the employe acts in view of the danger to which he is subjected. Where he is an infant, or otherwise lacking in discretion or judgment, there can never be any doubt but that he must be shown to have appreciated the danger before he can be charged with assumption of the risk arising therefrom; and this, too, although the facts brought to his knowledge are sufficient to have warned one of ordinary capacity. *Mullin* v. *California Horseshoe Co.* (1894), 105 Cal. 77, 38 Pac. 535.

The principle is stated in a recent text-book as follows: "The plaintiff is presumed to possess ordinary intelligence, and to exercise care to discover what such intelligence would enable him to know and appreciate. And as he is required to apply this grade of intelligence to the investigation of the risks of the employment which he undertakes, so he is

required to draw upon whatever. of special knowledge or experience he may have.    Dangers that would not be heeded by persons unused to factories would become apparent to one who had had years of experience at different shops, and so dangers of machinery that might not be apparent to him may be obvious to a skilled mechanic or engineer.    Each, according to the degree of skill, experience or knowledge in the business he possesses, must exercise due. care to discover what dangers surround him."    Dresser, Employers' Liability, §95, pp. 435, 436.

The requirement that the employe does or should appreciate the danger to which he is subjected is essential to a contract for assumption of the risk arising from the existence of an obvious defect.    Where the risk assumed is incident to the occupation, the acceptance of the employment creates the contract.

12.    The risk, because of which appellant was injured, was not incidental to his employment, and whether he would be permitted to set up his nonappreciation of such danger is not, therefore, decided; the decision being limited by the facts of the case to danger assumed because of its being open and obvious.

In *Ferren* v. *Old Colony R. Co.* (1887), 143 Mass. 197, 9 N. E. 608, the plaintiff was of mature age, and had been in the railroad company's service about seven years, as a blacksmith. · His contract did not contemplate work outside of the shop.    In compliance with the direction of his foreman, he went with others into the yard to move a car.    He was caught between the side of the car and the wall, and was crushed.    He had not before been between the car track and the corner of the building at the place where he was injured, although he had never refused to help move cars.    The supreme court ·of Massachusetts, in affirming the judgment in his favor, said:    "Of course, he could see that this space was narrow; but it would seem that neither he nor the others who were pushing on the same side of the

car with himself understood that it was too narrow to allow them to pass through in safety. This was his mistake. Seeing the situation in a general way, he took hold among the others, and tried to pass through what proved to be too narrow a place for him. He did not rightly estimate the probability or extent of the peril to which he was exposing himself. Though he could see the position of the car and of the building, it might nevertheless be found by a jury that he did not appreciate, and in the exercise of due care was not bound to appreciate, the danger. If, under the circumstances stated, he was called upon by the foreman to assist in this work, which was outside of the work which he was employed to do, and in the place where he had not before done such work, and if the peril was not obvious to him, and he failed to take notice that the space between the car and the building was too narrow for him to pass through with safety, and if his attention was so given to the work which he was doing that he did not discover the danger till it was too late to save himself, we can not say, as matter of law, that he must be held to have assumed the risk. The case is close; but the evidence is sufficient to be submitted to the jury upon the question whether he was in the exercise of due care."

In *Roth* v. *Northern Pac. Lumbering Co.* (1889), 18 Ore. 205, 22 Pac. 842, the employe was a laborer, injured, while passing from one place to another in a factory, by a rapidly revolving shaft with projecting set-screws. The court said: "But it is to be borne in mind that there is a difference between a knowledge of the facts and a knowledge of the risks which they involve. One may know the facts, and yet not understand the risks. * * * 'It is not so much a question whether the party injured has knowledge of all the facts in his situation, but whether he is aware of the danger that threatens him.' * * * So that in a case like the present, where the evidence is conflicting as to whether or not defendant had knowledge of the risks to

which he was exposed, the question is preëminently for the jury." "Sometimes the circumstances may show, as matter of law, that the risk is understood and appreciated; and often they may present in that particular a question of fact for the jury." *Fitzgerald* v. *Connecticut River Paper Co.* (1891), 155 Mass. 155, 29 N. E. 464, 31 Am. St. 537; *Mahoney* v. *Dore* (1892), 155 Mass. 513, 30 N. E. 366; *Russell* v. *Minneapolis, etc., R. Co.* (1884), 32 Minn. 230, 20 N. W. 147.

13. "One does not voluntarily assume a risk, within the meaning of the rule that debars a recovery, when he merely knows there is some danger without appreciating the danger." *Mundle* v. *Hill Mfg. Co.* (1894), 86 Me. 400, 405, 30 Atl. 16. The principles declared in the cases cited are recognized by the following text-books: 1 Shearman and Redfield, Negligence (5th ed.), §215, p. 371; Dresser, Employers' Liability, pp. 397, 436; 1 Bailey, Per. Inj., §§841, 844.

That it is essential, to create an implied contract to assume a risk arising from the open and obvious character of the danger, that the employe both knows and appreciates the danger, has recently been so often declared by the Supreme Court that we do not feel at liberty to hold otherwise, nor to hold that knowledge embraces and includes the appreciation required. *City of Ft. Wayne* v. *Christie* (1901), 156 Ind. 172; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297-303; *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583-590; *Chicago, etc., R. Co.* v. *Lee* (1902), 29 Ind. App. 480; *Chicago, etc., R. Co.* v. *Richards* (1901), 28 Ind. App. 46.

14. The liability of confusing the terms "defect" and "danger," as used in the instructions given, in view of the evidence, rendered it proper that the distinction made by the instruction refused should have been expressed to the jury.

15. The evidence does not show that the plaintiff was of inferior intelligence or tender age. Being of ordinary

capacity and intelligence, evidence that he did not know all the danger which he ought to have seen and appreciated would amount to nothing. "But when a man experienced in the business testifies that he did not know the risk, the court can not as readily say that he could have seen it had he looked, and the jury must decide the conflict of fact and inference." Dresser, Employers' Liability, §95, p. 437.

There are, however, other facts than those relating to the incapacity of the party injured justifying the inference that the danger arising from a known defect, or an opportunity to know a given defect, was not appreciated by the employe. In *City of Ft. Wayne* v. *Christie, supra,* the employe was of mature age, and injured while digging a trench. In *Consolidated Stone Co.* v. *Summit, supra,* the appellee was a derrick hand. In *Wright* v. *Chicago, etc., R. Co., supra, Chicago, etc., R. Co.* v. *Lee, supra,* and *Chicago, etc., R. Co.* v. *Richards, supra,* the persons injured were brakemen, presumably of full age and capacity.

Where the obvious defect is such that there is no room for diverse inference with regard to the knowledge and appreciation of the danger thereof by the injured employe, assumption of the risk becomes a question for the court, exactly as any other question of fact with regard to which the evidence is uncontroverted. Where there is room for diverse inference, the question is one for the jury. It becomes necessary in the case at bar to determine whether there was any evidence authorizing the submission to the jury of the question presented by the instruction refused. If so, the plaintiff was entitled to a full statement of the law applicable to the hypothesis of fact maintained by him.

The evidence of the plaintiff herein was in part as follows: "I was employed at the works of the defendant. * *. * While with defendant I cleaned castings. The cleaning was done in the yard on a tramway between the chipping room and the turntable in good weather. In bad weather I worked inside the chipping room. I had been

working on mill frames several weeks before I got hurt, and at defendant's works.    *   *   *   John Linneman, the straw boss, ordered the men out into the yard to do their chipping.    Linneman ordered me out on the tramway when the weather was good.    A crane raised the mill frames onto the truck, then two or four men pushed the truck and frames out onto the tramway.    The truck thus pushed out was always left between the chipping room and the turntable. *   *   *   It took all morning to clean one mill frame. *   *   *   After they were cleaned, we took them into the machine shop if they were needed there, or piled them in the yard.    *   *   *   I was cleaning a mill frame when I was injured.    I was in the yard on the tramway, about six feet from the turntable.    The casting was on a truck which was eighteen inches high, three and one-half or four feet wide, and four to six feet long.    It was made of wood and iron.    The top was wooden, and about two inches thick. It was narrower one way than the other, being about three feet wide by two.    It was made in the foundry, raised by a crane, and let down on a truck, which three or four men pushed out on the tramway.    The trucks were always taken out about fifteen or twenty minutes before 7 o'clock in the morning and put on the tramway.    Two or three men pushed them out.    The truck I was working on when I was injured was setting where it was when the accident happened.    When I went to work in the morning I could not move it alone.    *   *   *   I put my feet on the truck and cleaned the inside of the castings.    Then I cut the rough places off with a chisel and emery stone.    Then I sat on the truck, took the chisel in my left hand and a hammer in my right; my face was always towards the casting.    I was all the time looking backwards, and cleaning under the flaring part of the casting.    I was cleaning the east end of the casting when I was hurt, and my face was towards the west.    There was nobody working on the pig-iron when I began work that morning.    The pile that fell on me was

then three or four feet high. Chalmers Crabtree and James K. Greenwood worked on the pig-iron later. I did not notice the pig-iron. I did not know it was likely to fall, and was never notified that it was dangerous when piled seven or eight feet high. The pile that fell was three or four feet from the truck. There had never been any pig-iron piled so near the working place as that before. Pulley rims were piled there for a long time, and these were taken away and the pig-iron put in their place. * * * I do not know how the pile was when it fell, and remember nothing about the accident. The first I knew I was in the city hospital. This was the second day after the accident. * * * My injuries were, a hole in the back of my head, my face skinned, my left collarbone displaced, my right arm stiff, my hip cut, my leg cut and scabbed, my testicle bursted out so that it had to be sewed up, my right leg and knee crushed, and my spine injured."

It does not appear from the testimony of any witness that the plaintiff had actual knowledge of the danger to which he was subjected by the defectively piled iron, or that he had knowledge of the defects therein. The utmost that can be said is that he might, by an examination, have discovered them. The circumstances are such as to admit of different inferences.

16. If plaintiff saw or should have seen the defective piling of the iron, and appreciated the danger therefrom, the fact that his duties did not relate to that department of his employer's work will not prevent the application of the doctrine of assumed risk to him. Whether he ought to have seen the defect, in the exercise of reasonable care, depends, to a large degree, upon the circumstances in which he was placed. The evidence shows that he knew, the iron was piled near the track where he was working. That fact alone is not sufficient, as a matter of law, within the principle announced by the cases cited, to charge him with the assumption of risk arising from the defective piling thereof.

If he knew or ought to have known and appreciated the risk incurred by continuing in his work, he can not recover. The question was one for the jury, and, in view of the undisputed facts as to his knowledge of the iron being piled near the track, the nature of the defect of such piles, and his asserted ignorance of the danger arising therefrom, the instruction requested was a proper one.

The complaint counts upon negligence in the following particulars: (1) Piling pig-iron along and too near the track upon which plaintiff was working; (2) piling said iron too high; (3) piling said iron in unsubstantial ricks; (4) piling said iron in a negligent manner, making said ricks dangerous and likely to fall upon him.

17. The jury, in answer to interrogatories, found that the men engaged in piling the pig-iron were experienced in doing that kind of work, and were ordinarily careful and competent men; that the men piled the pig-iron carefully, and as it had ordinarily been piled in defendant's yard; that the men piling the iron had been told by their foreman to pile it carefully; that the defendant did not, before the rick fell, know that it was dangerous; that the men thought the rick was safe before it fell; that the rick had been piled in the same manner as other ricks, and to the same height; that the defendant had found by experience that it was safe to pile pig-iron to a height of seven or eight feet in the manner the rick that fell was piled; that the defendants exercised ordinary and reasonable care in inspecting the rick that fell. There is no finding whatever negativing the negligence charged in piling the iron too near the track. The facts thus exhibited are not sufficient to establish appellee's freedom from negligence, and thereby render harmless, error in refusing an instruction relative to the question of assumed risk.

18. There was no charge in the complaint that inexperienced or incompetent men were employed. The finding upon that point is not, therefore, within the issues, and

can not be considered. Elliott, App. Proc., §§766, 767; *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 20 L. R. A. 400.

19. The statements that the work was carefully done are conclusions, and can not be considered.

20. "Care" and "carefulness" are antonyms for "neglect" and "negligence." That negligence is a conclusion of law has been often enough decided. *Pittsburgh, etc., R. Co.* v. *Spencer* (1884), 98 Ind. 186; *Chicago, etc., R. Co.* v. *Burger* (1890), 124 Ind. 275.

21. That the men piling the iron exercised ordinary and reasonable care is also a conclusion of law. *Conner* v. *Citizen St. R. Co.* (1886), 105 Ind. 62, 55 Am. Rep. 177; *Town of Boswell* v. *Wakely* (1897), 149 Ind. 64; *Pittsburgh, etc., R. Co.* v. *Spencer, supra.*

22. The negligence charged in piling the rick that fell depends upon the manner in which it was piled. The interrogatories are silent upon that point. The question to be determined can not be influenced by evidence of facts not connected therewith. Such facts are not relevant. General comparisons with other ricks which did not fall can not be made. *Washington Tp., etc., Gas Light Co.* v. *McCormick* (1898), 19 Ind. App. 663; *Indiana, etc., Gas Co.* v. *New Hampshire Fire Ins. Co.* (1899), 23 Ind. App. 298.

23. That the appellee did not know that the rick was dangerous is not equivalent to a finding of facts showing reasonable care to make safe the place where its employe was working.

24. There is no charge of wilfulness in the case, and what the men thought about the safety of the rick does not appear to be in issue.

For error in refusing the instruction requested the judgment is reversed, and the cause remanded, with instructions to sustain motion for new trial and for further proceedings.