C. L. DARDEN, ADMINISTRATOR OF EVAN POWELL, v. ROBERT G. LASSITER & COMPANY.

(Filed 5 March, 1930.)

**Master and Servant C b—Evidence of master's failure to provide reasonably safe place to work in exercise of due care held sufficient.**

> Evidence tending to show that plaintiff's intestate, employed by the defendant, was engaged in doing fine grading at the bottom of a ditch 7 feet deep and 21 inches wide, the sides of which were saturated with water from recent rains which seeped in and had to be pumped out, that there had been cave-ins prior to the accident in suit, that quicksand had been encountered at one place in digging the ditch, that defendant's foreman had ordered braces to be placed in the ditch every 8 feet; in accordance with the usual method of doing such work, but that plaintiff's intestate was not employed to put in the braces, and that shortly after defendant's foreman had gone to lunch the sides of the ditch, where no braces had been put in for 18 or 20 feet, caved in, causing the injury to plaintiff's intestate resulting in death : *Held*, the evidence was sufficient to overrule defendant's motion as of nonsuit, and the submission of the case on the usual issues, on the theory of defendant's duty, in the exercise of due care, to furnish a reasonably safe place to work and reasonably safe means and appliances, and plaintiff's intestate's assumption of ordinary, obvious risks, was proper.

APPEAL by defendant from *Daniels, J.,* October-November Term, 1929, of WILSON.

Civil action to recover damages for the death of plaintiff's intestate, alleged to have been caused by the wrongful act, neglect or default of the defendant.

The evidence tends to show that on 29 December, 1927, plaintiff's intestate, Evan Powell, was in the employ of the defendant, working in a trench or ditch cut along Mercer Street in the town of Wilson, preparatory to laying therein sewer or water mains. The trench in question was cut by a ditching machine to approximately the required depth, and plaintiff's intestate was engaged in smoothing out the bottom of the trench to an uniform grade, called "fine grading," when the trench caved in and so injured him, along with two other workmen, that he died the following day.

Plaintiff's intestate, a colored man about 29 years of age, had been working with this particular crew for about two months, though he had been in the employ of the defendant, as a day laborer, for approximately five months prior to the time of his injury. At the point where the deceased was injured, the trench was approximately seven feet deep and about 21 inches wide. There had been considerable rainfall and the ground was saturated with water. It seeped in from the walls on both sides, and there had been a couple of cave-ins prior to this one, and about fifteen yards from where the last one occurred, quicksand had been encountered about six feet below the surface of the ground. A pump was used to keep the water out of the trench.

Defendant's foreman, O. L. Pickering, in charge of operations, directed that certain bracing be used to keep the walls of the trench from falling in, which consisted of two upright pieces of timber, placed from 8 to 16 feet apart along the sides of the ditch, with two horizontal braces placed between them, one at the top and the other at the bottom. But there were no longitudinal stringers used to keep the banks of the ditch from falling or caving in, as was customary in such work.

On the day in question, the foreman went to lunch about 12:30 and left the others working in the ditch. There were no braces for a space of 18 or 20 feet (one witness said from 35 to 40 feet) immediately behind the machine, where plaintiff's intestate was working, and shortly after the foreman left, the bank of the ditch suddenly caved in, just beyond the last brace, and temporarily buried three of the workmen. "These parties were caught in the slide or cave-in between the last one of the braces up in the ditch and the machine."

The defendant's foreman testified in part as follows: "It was my duty to see that these braces were put in. I instructed them to put the braces in at intervals of 8 feet. There was a space behind the machine of about 12 or 15 feet in which there were no braces. They had put in all the braces I had instructed them to put in except the last one. They did not have it in when I left. I left them to put that in—the one right behind the machine—and to lay the pipe. Evan Powell was in the ditch at the time I left. He was leveling the bottom or doing fine grading."

It was no part of plaintiff's intestate's duty to put in the braces. "Evan Powell was fine grader in the bottom of the ditch." Other employees were instructed to place the braces in the ditch, which was done under the immediate supervision of the foreman, who, in turn, was under the supervision of an engineer, employed by the defendant.

The defendant offered evidence tending to show that it was a part of plaintiff's intestate's duty to help put in the braces, hence it was contended that he necessarily assumed the risk of his injury.

The usual issues of negligence, contributory negligence, assumption of risk and damages were submitted to the jury, which resulted in a verdict for the plaintiff. From the judgment entered thereon the defendant appeals, assigning errors.

*A. C. Dickens and Finch & Rand for plaintiff.*
*Parham & Lassiter and Connor & Hill for defendant.*

STACY, C. J., after stating the case: The case, with evidence sufficient to carry it to the jury, was tried upon the theory that in law the defendant was in duty bound, in the exercise of ordinary care, to provide a reasonably safe place for plaintiff's intestate to work, and to furnish him reasonably safe means and suitable appliances with which to execute the work assigned, subject to the limitation that the deceased took upon himself, as an employee or servant of the defendant, the ordinary risks of danger incident to the employment, which were obvious or could have been perceived by him in the exercise of his senses and by the use of ordinary care and circumspection. In this, there was no error. *Lindsey v. Lumber Co.*, 190 N. C., 844, 130 S. E., 713; *Van Steenburgh v. Thornton*, 58 N. J. L., 160. Such was the holding in *McDougald v. Lumberton*, 129 N. C., 200, 39 S. E., 826, a case somewhat similar to the one at bar and involving the same principles. See, also, *City of Fort Wayne v. Christie*, 156 Ind., 172; Notes 21 A. & E. Ann. Cas., 708, and 7 A. & E. Ann. Cas., 301.

The case of *Mace v. Mineral Co.*, 169 N. C., 143, 85 S. E., 152, strongly relied upon by appellant, is not in point (except upon the defendant's evidence which was rejected by the jury), for in that case the plaintiff's intestate was foreman or overseer in charge of the work.

Whether "fine grading" in the bottom of a trench, such as plaintiff's intestate was doing in the instant case, is dangerous, or otherwise, would seem to depend upon a variety of circumstances. In some cases, it might be entirely safe; in others, not. The size and dimensions of the trench might affect it. The character of the soil would certainly have some influence. The presence of limestone, or quicksand, or of earth newly filled in, the moisture in the ground and numerous other conditions might render such work more or less safe, or more or less hazardous. The state of the weather or the season of the year might have something to do with it. But all of these are matters of fact, about which there may be conflicting evidence, as in the instant case, calling for determination by a jury.

Indeed, in the instant case, the fact that plaintiff's intestate's work was done under the immediate supervision and direction of the defendant's foreman would seem to be equivalent to an assurance that he

might safely proceed with it. *Smith v. Kansas City,* 125 Mo. App., 150. When the foreman went to get his lunch, he left plaintiff's intestate at work in the trench, leveling the bottom or doing fine grading. He was, therefore, at the time of leaving, in a better position than plaintiff's intestate to observe and appreciate the danger. *City of Fort Wayne v. Christie, supra.*

The case was properly submitted to the jury.

No error.